# CROPLEY *v.* EYSTER.

STATUTE OF LIMITATIONS ; NOTE SECURED BY MORTGAGE ; TRANS-
FER AFTER MATURITY ; ESTOPPEL ; PAYMENT OF INTEREST.

1. On a petition by the holder of one of two notes secured by mortgage for leave to participate in the proceeds of sale of the mortgaged property in foreclosure proceedings instituted by the holder of the other note, the bar of limitations is not that applicable to an action on the note, but that which applies to the remedy for the enforcement of an equitable right under the mortgage ; and the same period that would bar an ejectment is required.

2. Possession of a negotiable note endorsed in blank raises the presumption that the holder received it before maturity, in good faith, and without notice of anything to impeach his rights as such holder.

3. But this presumption is easily overthrown, and slight circum- stances are often sufficient to cast upon the holder the burden of proving a transfer before maturity.

4. Proof that on the day of its maturity the note was in the actual control and custody of the payee, to whom a payment on account of principal and interest was made, is sufficient to over- come the presumption.

5. One who, by representing that a note is secured by a first mortgage and that a second note in which he is named as payee has been paid, induces another to accept it and to surrender notes for a like amount and secured by a first mortgage, is estopped

to deny the truth of his representations ; and as to his right as the holder of such second note against her, he will be treated in equity as a second mortgagee ; and his transferee after maturity will have no superior rights.

6. In order for the payment of interest to have the effect of removing the bar of limitations, it must appear that the payment was in fact made by the debtor or by his authority. The mere endorsement on the back of the note that interest has been paid from time to time is not proof of the fact.

No. 599. Submitted October 20, 1896. Decided November 3, 1896.

HEARING on an appeal by the petitioner from a decree dismissing a petition filed in a proceeding for foreclosure of a mortgage, for leave to participate in the proceeds of sale. *Affirmed.*

The COURT in its opinion stated the case as follows:

This suit had its origin in a bill for foreclosure filed by Caroline Eyster in the Supreme Court of the District, May 21, 1895.

The bill was filed against Richard L. Cropley and Frances M. Jones, and alleged, substantially: (1) That complainant was the owner and holder of a note for $2,000 made by said Cropley on September 1, 1873, payable to the order of said Frances M. Jones, and due two years after date, with interest, payable quarterly, at the rate of nine per cent. per annum. (2) That said note was endorsed and delivered by said Frances M. Jones to complainant for a full and valuable consideration. (3) That another note for $1,300 was executed at the same time by said Cropley and payable to said Frances M. Jones at eighteen months, with interest at six per cent. per annum. (4) That a conveyance in trust was, on the same day, executed by said Cropley and his wife to Frederick W. Jones, trustee, of certain described land in the city of Georgetown, to secure the said notes; and power of sale was therein conferred in case of default in the payment of the principal of the said notes or any instalment of interest on either of them, as the same matured. (5) That about October 12, 1881, complainant made an

agreement in writing with said Cropley to reduce the interest on said note to seven per cent. per annum upon the express condition that he should pay, and keep duly paid, the taxes and insurance due and accruing due on said premises, as well as remit with promptness, and free of charge to her, the said quarterly interest payments. (6) That said Cropley paid interest until March 1, 1895, when he made default. (7) That upon inquiry complainant discovered that he had made default in the payment of taxes and that there was then a large sum due on account thereof, with penalties and costs, that were a charge upon the said land. (8) That she believes the $1,300 note had long since been paid by said Cropley. (9) That the trustee, Fred. W. Jones, died February 10, 1891, after having devised and bequeathed all of his estate to his wife, said Frances M. Jones. (10) The prayers of the bill are for an order of sale and the appointment of a substitute trustee for said Fred. W. Jones, deceased, and for general relief. (11) An amended bill was filed June 20, 1895, making the heirs at law of said Fred. W. Jones parties defendant.

The answer of Frances M. Jones is formal and of no consequence in the case. Richard L. Cropley's answer admitted the substantial allegations of the bill, and expressly averred that the $1,300 note had been paid by him during the lifetime of said Fred. W. Jones.

On November 21, 1895, a decree was passed ordering the sale of the said premises as prayed, and appointing W. L. Cole and Charles H. Cragin trustees to make the same. Sale was duly made and the report thereof confirmed, January 3, 1896; and the auditor's report for distribution of the proceeds, in which the $1,300 note was regarded as no longer in existence, was confirmed January 9, 1896.

On January 11, 1896, the appellant, George W. Cropley, filed a petition in the case, in which he alleged: (1) That he was the holder of said $1,300 note, which had been endorsed to him for full value by said Fred. W. and Frances

M. Jones, before maturity. (2) That said note, less certain part of the principal, and the interest to March 1, 1879, was still due, with interest at the increased rate of ten per cent. per annum by agreement endorsed thereon. (3) After reciting the proceedings on complainant's bill, as aforesaid, it is alleged that he was not aware of the same and knew nothing of the existence of such cause until January 10, 1896, when he saw in a newspaper that the sale had been made; whereupon he notified the said trustees not to pay over the proceeds of said sale before he could present his petition, &c. (4) He prayed that the auditor's report be set aside and the matter again referred with instructions to allow petitioner his due proportion of the proceeds of said sale.

Complainant and the Farmers' and Mechanics' Bank answered the petition, denying the allegations thereof upon information and belief. It appears that there was a second mortgage on the said premises to secure a note due by said Cropley to the Farmers' and Mechanics' National Bank of Georgetown, and that said bank became the purchaser under the foreclosure sale. The property sold for $2,700, which is not sufficient to pay both the debt due complainant Eyster and the said $1,300 note.

Mrs. Eyster has been from the beginning a resident of Fairmont, West Virginia, and is about 78 years of age. It appears that prior to September 1, 1873, Fred. W. Jones owned the mortgaged premises, and that Mrs. Eyster held his two notes for $1,000 each, secured by mortgage thereon. He sold the property to Richard L. Cropley, and proposed to Mrs. Eyster to substitute his said notes with the $2,000 note aforesaid.

After some correspondence, in which said Jones assured her that the property was the same and that the new note was secured by first mortgage as the old ones were, she agreed to receive the note, and then surrendered the old ones. She had no knowledge then of the $1,300 note. She

testified that Jones sent her the trust deed sometime afterwards (witness could not state the time with any accuracy); and she had it examined by some competent person, who told her of the recital of the $1,300 note therein, and advised her to inquire into it. She wrote to Jones, and he replied in a letter, that has been lost, that the $1,300 note had been paid. She had never heard of it again until the filing of the intervenor's petition. The Cropleys were brothers and lived in Georgetown, near each other, during the whole time covered by these transactions. Fred. W. Jones was a practicing lawyer in Georgetown, and died February 10, 1891.

The $1,300 note was produced by George W. Cropley, who said that he purchased it of Fred. W. Jones shortly after its date. It is endorsed by Frances M. and Fred. W. Jones. The following entries appear on the back of the note:

"Rec'd on ac. within note, March 5th, 1875, $339.21. H. W. Barrett, cashier Georgetown Sav. (?) Bank. Int. paid to M'ch 1st, 1874, $39.00; int. paid to Sept. 1st, 1874, $39.00. Frances M. Jones, F. W. Jones. March 5th, 1875, I hereby agree to pay ten (10) per c'ts interest per annum on one thousand dollars' balance. R. L. Cropley. April 29, rec'd one hundred dollars, being one year's interest to March 1st, 1876. Jan. 30, int. paid to M'ch 1st, 1877, $100; int. paid to March 1st, 1878; int. paid to M'ch 1st, 1879."

It is conceded that the interest due March 1 and September 1, 1874, as endorsed above, was paid; that the payment of $339.21 was made March 5, 1875, by which the principal was reduced to $1,000; and that R. L. Cropley on the same date signed the agreement to pay interest thereafter at the rate of ten per cent.

The facts about which there is dispute relate to the possession and ownership of the note, at those dates, and to the later endorsements of interest payments from March, 1876, to March 1, 1879, and the payment of the principal, which will be considered later. The cashier of the Georgetown Savings Bank, whose memory was aided by the books of the

bank and the endorsements, testified that the said note was in the possession of the said bank on March 4, 1875, for collection on account of Fred. W. Jones; that it was endorsed on the back by him and Frances M. Jones, and that R. L. Cropley paid the said sum of $339.21 by check on that date, and the same was credited to the account of Fred. W. Jones. Witness was sure that George W. Cropley did not deposit the note. The note was not discounted by the bank, and the books show nothing of any other payment than the $339.21 aforesaid. The bank closed its business in February or March, 1877, and some of its books have been lost.

The cause came on for hearing March 25, 1896, and the petition of George W. Cropley was dismissed, with costs. From that decree he has appealed.

*Mr. J. H. Ralston* and *Mr. F. L. Siddons* for the appellant.

*Mr. W. L. Cole* for the appellee Eyster.

*Mr. Chas. H. Cragin* for the appellee Bank.

Mr. Justice SHEPARD delivered the opinion of the Court

1. In this proceeding the bar of limitation, or lapse of time, does not apply as in case of an action on the note, but to the remedy for the enforcement of an equitable right in land under the mortgage; hence the same period that would bar an ejectment is required. *Peters* v. *Suter*, 2 MacA. 516, 518; *Elmendorf* v. *Taylor*, 10 Wheat. 152, 169. However, as more than twenty years elapsed between the maturity of the note and the filing of appellant's petition, the bar is complete unless his right of action shall have been duly kept alive. Whether this has been, so as to let in the appellant's claim to right of participation in the proceeds of the foreclosure sale (a point of special importance to the interest of the second mortgagee), depends upon circumstances that will be considered later.

2. The note, being negotiable and in the possession of the

appellant under an endorsement in blank, he is entitled to the benefit of the presumption that he became its holder before maturity in good faith, and without notice of anything to impeach his right as such holder. *Collins* v. *Gilbert*, 94 U. S. 753; *New Orleans, etc., Co.* v. *Montgomery*, 95 U. S. 16, 18.

But this presumption, adopted in accordance with the general policy of the law in respect of negotiable paper, is easily overthrown, and slight circumstances are often sufficient to cast upon the holder the burden of making satisfactory proof of transfer before maturity.

The fact that the note was in the actual custody and control of the endorser, Fred. W. Jones, to whom the payment of interest and part of the principal was certainly made on the day of its maturity, is amply sufficient to overcome the presumption in this case.

The substantial equities of the other parties have ripened in the lapse of time. The inaction of the appellant for so many years has reasonably operated to the prejudice of them both. Encouraged, so to speak, to suppose this second note had been discharged, one has been indulgent during the long accumulation of interest, and the other has extended new credit upon the same security. The memories of living witnesses have become impaired and some written memorials have been lost. Fred. W. Jones, the chief actor in the transaction, who might have explained everything, died five years before the appellant set up his claim. Appellant lived in the same town, was the brother of the debtor, and yet made no inquiry in respect of complainant's debt, and claims to have been ignorant of the proceeding to foreclose, and the sale thereunder, until it had been actually made, after the usual advertisement in a newspaper. Moreover, he did not come in and ask that a resale be made with opportunity to increase the bid; but, accepting it as final, asks to share in the proceeds to the serious diminution of the just claim of the complainant. These circumstances, while not sufficient

to defeat his claim, are yet such as to require that he shall make clear and satisfactory proof of every fact necessary to its establishment.

Assuming that he came lawfully into the possession of the note at some time, still the proof is not sufficient to satisfy us that he obtained it before its maturity. He has not explained to our satisfaction the possession of the note by Jones before and at maturity, when the maker paid the accrued interest and a part of the principal, and agreed to the increase in the rate of the interest. Jones deposited the note in the savings bank; the payment was made to him and passed to his credit on the books. George W. Cropley was not heard of in the transaction by the bank or by Richard L. Cropley.

The latter testified to making the payment and the promise of increased interest to Jones, and to an arrangement by which the note was to be discharged in certain claims that he had placed in Jones' hands for collection. No settlement of these matters had ever been had or demanded.

During the time that Jones must have had the note in his possession he wrote to complainant that it had been paid. The only explanation that appellant gives for the possession of the note by Jones, with whom he was very intimate, is, that Jones told him "the note would be paid, and undertook to see that it was paid." As we have said before, the explanation is not satisfactory. There was no reason that Jones should undertake the collection. The security was ample, the note had not been dishonored, the maker was solvent, and the appellant was engaged, as he says, in a prosperous business, and therefore was under no temptation to conceal his ownership from creditors, if he had any.

The effect of his failure to show that he really obtained the note for value, before maturity, is to let in the complainant, Eyster, to the assertion, against him, of any equities

that she could assert as against Jones, through whom he claims.

Now, it is very plain, that by inducing her to accept the $2,000 note upon the representation that it was secured by a *first* mortgage, Jones became estopped to deny the truth thereof; and as to his rights against her a court of equity would regard and treat him as a second mortgagee in fact. Taking after maturity, appellant, as his endorsee, can have no superior right.

This, without regard to the question of limitation, is sufficient to dispose of the appeal as to Mrs. Eyster. She is, unquestionably, entitled to the first proceeds of the sale without diminution on account of appellant's claim.

3. In the determination of the respective claims of the appellant and the second mortgagee to the surplus that will remain after the payment of Mrs. Eyster's note, with interest and costs, the question whether the appellant's right has been barred by the lapse of time becomes of controlling importance.

Assuming that the note was not paid, or entitled to be considered as paid, by the arrangement between its maker and Jones, as testified to by the former, the acknowledgment of the debt through the payment of interest up to March, 1879, is relied on as removing the bar. To have that effect, it must appear that payment was in fact made by the debtor or by his authority. The mere endorsement on the back of the note that interest had been paid from time to time is not proof of the fact. There are four of these endorsements, as follows: "April 29, received one hundred dollars, being one year's interest to M'ch 1st, 1876. Jan. 30, int. paid to M'ch 1st, 1877, $100. Int. paid to M'ch 1st, 1878. Int. paid to M'ch 1st, 1879."

Appellant testified that the endorsement of payment to March 1, 1876, was in Jones' writing, the next in his own, and the third and fourth in R. L. Cropley's; and that the last three payments endorsed had been made to him.

R. L. Cropley denied positively that he had paid the said interest, or any sum, on said note since March 4, 1875, to Jones or to appellant or to any one else.   He denied writing any one of the endorsements, and said they were all in the handwriting of Jones, with which he was familiar.   A well known expert, also familiar with Jones' writing, was positive in the opinion that he had written each endorsement.

The fact that these endorsements were made by Jones and at regular intervals might serve, in a very slight degree, to corroborate the statement of R. L. Cropley as to the arrangement made with Jones for the discharge of the note; but it is not necessary to consider that issue.

After a careful consideration of the evidence of all of the witnesses, in the sight of the skillful and searching examination and cross-examination to which they were in turn subjected, we cannot find that the endorsed payments were in fact made by Richard L. Cropley or by his authority, or that he has, since March 4, 1875, either acknowledged the obligation of the said note or promised to pay it.   These conclusions make it unnecessary to consider other questions that were raised on the argument.

We find no error in the decree, and it must be affirmed, with costs to the appellees.   It is so ordered.     *Affirmed.*