## MORAN v. JUDSON.
### No. 6932.

United States Court of Appeals for the District of Columbia.

Argued Jan. 12, 1938.
Decided March 14, 1938.

J. Bruce Kremer, Herbert M. Bingham, George B. Springston, H. Donald Kistler, and Bruce A. Low, all of Washington, D. C., for appellant.

William Stanley and J. Edward Burroughs, Jr., both of Washington, D. C., for appellee.

Before GRONER, Chief Justice, and STEPHENS and MILLER, Associate Justices.

GRONER, C. J.

Ruth B. Judson (appellee) in 1927 purchased from Park Savings Bank six $1,000 negotiable real estate notes of Harry and Dora Berman. Simultaneously she placed them with the bank for safe-keeping and collection of interest, and they were put in a safe deposit jacket properly marked in her name to be thereafter held by the bank as her property. In 1930 appellee sold one of the notes to the bank. Subsequently, and in the latter part of 1930, Stunz, the executive vice president of the bank, extracted from appellee's safe-keeping jacket the remaining five notes and without her knowledge and consent sold them and deposited the proceeds to the credit of the bank. The bank became insolvent March 1, 1933. Conservators were appointed by the Comptroller immediately after the bank holiday, around March 9, and Moran (appellant) was appointed re-

ceiver by the Comptroller July 13. He found in appellee's safe-keeping jacket $5,000 of negotiable real estate notes made by Levi H. Hartgrove and wife, and on the jacket was an undated notation in the handwriting of Stunz that the Hartgrove notes had been substituted in the place of the Berman notes. This suit was brought by appellee against Moran, receiver of the bank, asking that she be declared the owner of and entitled to the possession of the Hartgrove notes. The theory of her suit is that the notes are her property and are constructively in her possession; that they are indorsed in blank and are negotiable securities; and that in these circumstances there is a legal presumption that she became holder before maturity in good faith and without notice of anything to impeach her right as such holder; and that the burden of rebutting the presumption of title rests on Moran. He answered the bill, denying the right of appellee to be declared owner of the notes and claiming them as part of the assets of the bank. The theory of his defense is that by virtue of his appointment he represents the general creditors and depositors of the bank and that appellee is not entitled to recover the notes and interest unless she can prove that the Hartgrove notes, which admittedly belonged to the bank prior to the substitution, were placed in her depository jacket prior to March 1, 1933, when the bank became insolvent. It will thus be seen that the real question in the case is: On whom is the burden of proof? And the question is vital because neither party is able to prove when the substitution occurred. Stunz whose misappropriations and peculations wrecked the bank and who alone knew the details of the transaction, committed suicide shortly after the bank's insolvency. The trial court held that the notes were the property of appellee and ordered that they should be turned over to her, together with the interest collected by the receiver. The appeal is from that decree.

■ No evidence was offered by either party at the trial, but it was stipulated that a note teller of the bank in an examination of the notebooks of the bank some time between March 1, 1933, and March 13, 1933, found the books in balance and upon reexamination of the books after March 13, 1933, found them out of balance to the extent of $7,000. The judge below held that the note teller's evidence had no probative force, and in this we agree. The lack

of balance in the books is wholly unexplained and wholly untraced so far as this transaction is concerned, and the record is silent whether the Hartgrove notes were ever entered in the books or have any relationship to the subsequent shortage found by the teller. Admittedly the books do not identify the Hartgrove · notes or, for that matter, any notes held by the bank. We think, as did the lower court, that the testimony of the teller proves nothing, and this leaves the case as made on the pleadings.

Viewed in this aspect the situation is this: Appellee charges that she has possession (through Moran as bailee) of the notes indorsed in blank; that the fact she is in possession of the notes raises a presumption that she has good title to them; and that her allegation of possession is sufficient to establish a prima facie case entitling her to recovery. Accordingly, she contends that the burden of rebutting the presumption, which is in all respects the equivalent of the burden of proving when the notes were substituted, is on Moran, and that, if Moran cannot prove her title to be bad, she is entitled to prevail on her prima facie case. Moran's position, as we have seen, is that if the substitution took place after the first day of March, 1933 (the date of insolvency), appellee is not entitled to recover because of the provisions of Rev.St. § 5242, 12 U.S.C.A. § 91, condemning preferences by an insolvent bank, and that therefore she has the burden of proving the date of the substitution; and here he also insists that, because appellee charged in her bill that the substitution occurred prior to March 1, 1933, she must prove it.

■ Considering first the contention of Moran that appellee, having alleged the date of the substitution as prior to insolvency, must sustain the burden in that respect, we think the answer depends upon whether the allegation as to the time of substitution was an indispensable part of appellee's prima facie cause of action. If it was, obviously she must prove it. If it was not, it was surplusage. The correct rule, we think, is that allegations in a complaint which are not indispensable to establish a prima facie case may be disregarded as surplusage and need not be proved. This was stated by Judge Sanborn in Board of Com'rs of Lake County v. Keene, etc., Savings Bank, 8 Cir., 108 F. 505, 515, applying the rule in a case which

in principle is substantially like this. In that case a bank sued the commissioners of a county upon coupons cut from funding bonds held by it and which were issued pursuant to an act of Legislature. The bonds did not reveal on their face whether the amount of the issue was within the constitutional limitation. The commissioners defended on the ground that the bonds were issued in exchange for county warrants which evidenced debts incurred beyond the constitutional limit, and that accordingly the bonds were void. The bank alleged that the debts evidenced by the warrants for which the bonds were issued were legal obligations of the county, but at the trial merely proved the bonds and the coupons and rested. The court held that the bonds were prima facie evidence of the validity of the debts they evidenced and that the other allegations to the effect that they were issued in exchange for other legal obligations of the county did not impose upon the bank the burden of proving that fact by other evidence than the bonds themselves, and that the additional allegations were not indispensable to the statement of a prima facie case, and, not being indispensable, could be disregarded and need not be proved.

Applying the rule here, we have a case in which it is conceded on the pleadings that appellee did have a safe-keeping jacket at the Park Savings Bank in which were deposited the Berman notes, and also that at some time those notes were extracted by an officer of the bank and sold for its account and the Hartgrove notes belonging to it substituted. It is also conceded that the Hartgrove notes were found in appellee's private safe-keeping jacket when Moran took charge of the affairs of the bank. This is enough, we think, to show that the bank—and afterwards the receiver of the bank—was the agent or bailee of the notes for appellee, and in that view the bank's possession was appellee's possession. Putting to one side, then, the dispute over the date of substitution, as to which there is no evidence, the situation is that appellee is in possession of negotiable notes indorsed in blank, and this possession, we think, is enough to raise a legal presumption of title. Section 79, title 22, D.C. Code of 1929, provides that: "Every holder is deemed prima facie to be a holder in due course." And in Cropley v. Eyster, 9 App.D.C. 373, 378, we said: "The note, being negotiable and in the possession of

the appellant under an endorsement in blank, he is entitled to the benefit of the presumption that he became its holder before maturity in good faith, and without notice of anything to impeach his right as such holder."

And in the case to which we have already referred, Board of Com'rs of Lake County v. Keene, etc., Savings Bank, Judge Sanborn said that the presumptions which arose upon the allegation of possession of negotiable bonds "go with it to the end of the trial, and must prevail, unless [the defendant] proves by a fair preponderance of competent evidence that the debt * * * was * * * unauthorized and void."

And in Donnelly v. Garvan, 111 Conn. 626, 151 A. 168, 169, a plaintiff suing on a note merely alleged that she was the holder of the note. The Connecticut court said: "In thus setting up that she was the 'holder,' the plaintiff stated all that was necessary, prima facie, to establish her right to sue and recover. General Statutes, § 4409. [N.I.L.] 'The plaintiff was justified in confining his allegations to such as disclosed his right prima facie to recover the amount of the note, and in leaving to the defendants to set up in their answer * * * the facts which served to limit that right.'" Quoting Mersick v. Alderman, 77 Conn. 634, 638, 60 A. 109, 111, 2 Ann.Cas. 254.

In Engles v. Williams, Mo.App., 203 S. W. 671, 672, the defendant had executed two notes for a loan and had given a chattel mortgage on five horses and mules as security. The creditor indorsed the notes and assigned the mortgage to the plaintiff to secure a loan. Defendant had retained possession of the horses and mules, and plaintiff sued in replevin, alleging she was the holder of the notes and of the mortgage and was entitled to possession of the animals. Defendant answered that he had paid to his creditor the amounts due on the notes and charged in addition that the transaction between the creditor and plaintiff was fraudulent. The jury found in defendant's favor, but the appellate court reversed because the trial judge had charged the jury that the burden rested on plaintiff to prove that she was a bona fide holder in due course and for value of the notes in question. On this point the court said: "Possession of a note properly indorsed, even after maturity, is prima facie evidence of ownership on the part of

such holder. [Citing cases.] Of course, the burden was upon defendant to plead and show that the transaction referred to was fraudulent. Defendant assumed this burden in his pleading, and the court should not have instructed that the burden was upon the plaintiff to show that the transaction was a bona fide one."

These cases correctly state the rule applicable in the District of Columbia and, when applied here in the situation we have shown, sustain the action of the trial court. Moran's allegation in his answer that the substitution occurred after insolvency is without evidence to sustain it. There is, therefore, nothing to defeat appellee's prima facie case. Such inferences as may be drawn from the admitted facts support her position rather than Moran's, for it is charged and not denied that after the sale by Stunz of the Berman notes in 1930 the bank continued to credit interest to her account precisely as it had prior to that time. Unless the money for these payments was supplied by the payment of interest money to the bank on the substituted notes, it would necessarily have appeared on the bank's books as a charge out of its own funds. The books are in the possession of the receiver, and presumably they show nothing of this nature. It is, therefore, not an unreasonable inference that the interest paid to appellee from 1930 to 1933 was from money received by the bank on the Hartgrove notes, which would indicate that the transfer had occurred long prior to the insolvency of the bank. In this view the receiver is forced to the position that there is something in Rev.St. § 5242, 12 U.S.C.A. § 91, which in itself will prevent recovery on a prima facie case, for the receiver says in his brief: "It is true that the Hartgrove notes were found in the Appellee's 'safekeeping' jacket and that jacket contained a notation that it contained those particular notes, and if there were no question of insolvency involved and no question as to the time when these notes were placed in Appellee's 'safekeeping' jacket, the presence of those notes in the said jacket might well raise a prima facie case that they belonged to the Appellee and that she was entitled to possession and ownership."

But if we are correct in thinking that appellee's prima facie case was sufficient, then we think there is no point in the suggestion that the burden shifted simply by reason of the bank's insolvency. It may well be that in view of the bank's insol-vency, Rev.St. § 5242, 12 U.S.C.A. § 91, avoids a preference, but in this case appellee is in effect suing in replevin and to defend on the ground that recovery would amount to a preference merely begs the question, for if she is entitled to recover it is because she has a right to the notes, and to the extent that she has a right to the notes, the receiver has none. And, as we have seen, she is entitled to establish her right to recover on the legal presumption that possession of the notes imports title; and in that case, with nothing to the contrary, Rev.St. § 5242, 12 U.S.C.A. § 91, presents no obstacle. What it prevents is interference with the assets of the bank itself and not with property which might legally be claimed or proven to belong to others. Corn Exchange Bank v. Blye, 37 Hun, 473, affirmed 101 N.Y. 303, 4 N.E. 635.

Affirmed.