DYE CONSTRUCTION COMPANY,
Petitioner,

v.

OCCUPATIONAL SAFETY AND
HEALTH REVIEW COMMIS-
SION, Respondent.

No. 81–1020.

United States Court of Appeals,
Tenth Circuit.

Jan. 28, 1983.

Alan A. Armour of Goldstein & Armour, P.C., Denver, Colo., for petitioner.

Shelley D. Hayes, Dept. of Labor, Washington, D.C. (Henry C. Mahlman, Associate

**424**

Regional Sol., Denver, Colo., T. Timothy Ryan, Jr., Sol. of Labor, Benjamin W. Mintz, Associate Sol. for Occupational Safety and Health, Allen H. Feldman and John A. Bryson, Appellate Litigation, Randy S. Rabinowitz, Dept. of Labor, Washington, D.C., on the brief), for respondent.

Before BARRETT, McKAY and SEYMOUR, Circuit Judges.

McKAY, Circuit Judge.

Dye Construction Company appeals from an order of the Occupational Safety and Health Review Commission affirming the Administrative Law Judge's imposition of a $280 fine for various serious safety violations.[1]

Appellant was installing a sewer line in Colorado Springs, Colorado. Manholes are required to be placed periodically along the line for service and repair purposes. These manholes are constructed of individual cylindrical sections of precast concrete pipe. Each section measures five feet in diameter and four feet in length and weighs about five thousand pounds. The sections are placed one on top of the other until the proper depth for the manhole is achieved.

Each section of concrete pipe has two precast holes on opposite sides of the inside of the pipe. The holes are three inches deep and are formed a few inches below the top of the pipe cylinder. A lifting bar or "spreader bar," consisting of a piece of metal pipe with a fixed steel pin welded to one end and a twelve to fourteen inch sliding pin welded to the other end, is placed inside the cylinder. The fixed end is inserted into one hole, and the sliding end is then fitted into the hole in the opposite side of the manhole section. A crane is then used to lift the concrete pipe by the spreader bar and place it in the manhole. In addition, the moveable end of the spreader bar has three holes drilled in it. A safety pin is placed in the appropriate hole in order to hold the moveable end in place and keep it from sliding in, for such "telescoping" while the concrete pipe is being lifted could cause it to fall.

On October 18, 1979, Dye employees were installing a manhole on the sewer line. They placed the spreader bar inside the cylindrical concrete pipe and inserted the ends of the bar into the three inch holes. They did not have a safety pin, so they pulled the bar as tight as they could, thinking it would be enough to keep the bar from telescoping. As the pipe was lifted by the spreader bar and swung around, a piece of concrete broke off from around the fixed end of the spreader bar, and the manhole fell on another employee, who was in a trench guiding the placement of the pipe. He suffered very severe injuries.

An OSHA Compliance Officer investigated the accident. The investigation resulted in Dye being cited for failing to comply with 29 C.F.R. § 1926.251(a)(1) requiring that rigging equipment be inspected before use to ensure its safety,[2] or in the alternate, with the employer's general duty under 29 U.S.C. § 654(a)(1) (1976) to keep the work place free from recognized hazards that are likely to cause death or serious physical harm;[3] with 29 C.F.R. § 1926.21(b)(2) requiring the instruction of employees in the recognition or avoidance of unsafe condi-

---

1. A serious violation exists
   if there is a substantial probability that death or serious physical harm could result from a condition which exists, or from one or more practices, means, methods, operations, or processes which have been adopted or are in use ... unless the employer did not, and could not with the exercise of reasonable diligence, know of the presence of the violation.
   29 U.S.C. § 666(j) (1976).

2. Title 29 C.F.R. § 1926.251(a)(1) (1981) provides that "[r]igging equipment for material handling shall be inspected prior to use on each shift and as necessary during its use to ensure that it is safe. Defective rigging equipment shall be removed from service."

3. Title 29 U.S.C. § 654(a)(1) (1976) requires that employers furnish employees "employment and a place of employment which are free from recognized hazards that are causing or are likely to cause death or serious physical harm to [the] employees."

tions;[4] and with 29 C.F.R. § 1926.251(a)(4) requiring that lifting accessories be marked to indicate their safe working loads.[5] The violations were classified as serious, and a $280 fine was proposed. Dye timely filed its notice of contest. The complaint and answer were then filed, and the matter was heard before an Administrative Law Judge, who affirmed the violations and the $280 fine. Appellant's petition for discretionary review by the Occupational Safety and Health Review Commission was denied. The ALJ's order became final, *see* 29 C.F.R. § 2200.90(b)(3) (1981), and this petition to review the Commission's order followed.

I

Dye argues that the action should be dismissed because the complaint amended the citation without listing the reasons for the amendment, thereby violating the Commission's procedural rules.

The citation alleged that the violations occurred on or about October 30 through November 7—the investigation period. The complaint incorporated the citation by reference but amended it to allege that the violations occurred from October 18—the date of the accident—through November 7.

Commission Rule 33(a)(3) provides that "[w]here the Secretary seeks in his complaint to amend his citation or proposed penalty, he shall set forth the reasons for amendment and shall state with particularity the change sought." 29 C.F.R. § 2200.-33(a)(3) (1981). In this case, the amend-

ment was stated with particularity; however, no reasons for it were given. Thus, there is a clear violation of the rule.

It does not follow that a violation of Rule 33 necessarily would result in dismissal of the action. Nothing in the regulations establishes the sanction for noncompliance with rule 33; however, the courts have generally not imposed a dismissal sanction unless the opposing party was unfairly surprised or prejudiced in its defense preparation.[6] *See, e.g., Boring & Tunneling Co. of America v. OSHRC,* 670 F.2d 13, 15–16 (5th Cir.1982); *Donovan v. Royal Logging Co.,* 645 F.2d 822, 827 (9th Cir.1981); *Jensen Construction Co. v. OSHRC,* 597 F.2d 246, 247–48 (10th Cir.1979).

Dye was in no way surprised or prejudiced by the amendment or the failure to list reasons for it. The only change was to include the date on which the accident occurred. Dye knew of the accident; it knew that the investigation was made because of the accident and that the citation was issued as a result of the accident investigation. No new facts or theories in support of the citation or new violations were alleged. The reason for the amendment—to include the day of the accident within the time period covered by the citation—was apparent. Thus, since the amendment worked no surprise or prejudice for defense preparation, the Commission did not abuse its discretion by refusing to dismiss the action against Dye. *Cf. Southern Colorado Prestress Co. v. OSHRC,* 586 F.2d 1342, 1347–48 (10th Cir.1978).

---

**4.** Title 29 C.F.R. § 1926.21(b)(2) (1981) requires that an employer "instruct each employee in the recognition and avoidance of unsafe conditions and the regulations applicable to his work environment to control or eliminate any hazards or other exposure to illness or injury."

**5.** Title 29 C.F.R. § 1926.251(a)(4) (1981) provides that "[s]pecial custom design grabs, hooks, clamps, or other lifting accessories, for such units as modular panels, prefabricated structures and similar materials, shall be marked to indicate the safe working loads and shall be proof-tested prior to use to 125 percent of their rated load."

**6.** This treatment is proper since "[t]he most important fact about pleadings in the administrative process is their unimportance. Agen-

cies still use them, but only for notice purposes." 3 K. Davis, Administrative Law Treatise § 14.11, at 46 (2d ed. 1980). If the pleadings impart to the parties notice of what is at issue, they have fulfilled their purpose. *Cf. Cornell & Co. v. OSHRC,* 573 F.2d 820, 822 (3d Cir.1978) (notice of contest letter treated as answer). Pleading errors are unimportant except to the extent that they impede the notification and trial preparation process. Thus, they should not preclude reaching the merits of a dispute unless they result in unfair prejudice or surprise. This is also consistent with the approach of the Federal Rules of Civil Procedure. *See, e.g.,* Fed.R.Civ.P. 61; *Cornell & Co.,* 573 F.2d at 823.

## II

Dye's second contention involves the Secretary's failure to prove Dye's corporate status. The complaint alleged that Dye was a corporation, and Dye's answer denied it. No evidence of Dye's corporate character was proffered at trial, and Dye asserts that this failure of proof is fatal.

■ The only allegations asserted in the complaint that must be proved are those that are material or indispensable to the complainant's cause of action. Anything else is surplusage and need not be established. *Moran v. Judson,* 96 F.2d 551, 552 (D.C.Cir.1938); *cf. United States v. De-Pugh,* 452 F.2d 915, 921 (10th Cir.1971) (surplusage in indictment may be disregarded). Thus, the Secretary must prove Dye's corporate character only if that fact is material to maintaining the cause of action, even though it was alleged in the complaint.

■ The Occupational Safety and Health Act regulates "employers," not "corporations." *See* 29 U.S.C. §§ 658, 659 (1976). Thus, the material fact that the Secretary must establish is Dye's "employer" status.[7] Whether it is a corporation is completely immaterial and therefore need not be proved even if alleged.[8] Further, there is sufficient evidence to support the Commission's finding that Dye is an "employer." [9] Indeed, Dye appears to contest only its status as a corporation and not as an employer.

## III

Dye's final contention is that the proximate cause of the October 18 accident was defective concrete, not the absence of the safety pin and that therefore Dye should not be held liable for the safety violation.

■ This argument represents a fundamental misunderstanding of the relevant issues in this case. This is not a tort action designed to affix civil liability for injuries sustained in the accident. Rather, it is an action to determine whether certain safety regulations were violated and, if so, whether a $280 fine is appropriate. The relevant inquiry is not the proximate cause of this particular accident but the risk of accident or injury as a result of the alleged violations and the seriousness of the potential injuries. *See, e.g., Kent Nowlin Construction Co. v. OSHRC,* 593 F.2d 368, 371 (10th Cir.1979); *Lee Way Motor Freight, Inc. v. Secretary of Labor,* 511 F.2d 864, 870 (10th Cir.1975). The risk of accident posed by the safety violations was amply established in the hearings below, and the employee's injuries attest to the seriousness of the potential harm.

The ALJ wrote an opinion that considered all of the issues relevant to each of the alleged violations, and we find that there was sufficient evidence to support his findings that the regulations were violated, that the violations were serious, and that a $280 fine is appropriate.

AFFIRMED.

---

7. Dye seems to understand this. "The entire Occupational Safety and Health Act of 1970 is grounded upon the proposition that *employers* are regulated in an effort to improve the safety of workplaces in America. If it is impossible to prove who is an employer, it is impossible to prove a violation of the Act." Appellant's Brief at 15 (emphasis added).

8. The reason for Dye's contesting its corporate status and the source of its apparent misconception that "employer" is synonymous with "corporation," is its concern over who will ultimately have to pay the fine—Dye or its principals. In its brief, Dye stated as follows:

The Administrative Law Judge went on to find that pleading corporate capacity was unnecessary, and that failure to prove it was harmless error, and that corporate entities may be disregarded in order to effectuate a clear legislative purpose. May a corporate entity be disregarded in order to collect a civil penalty? We doubt it. From whom will this penalty be collected, if indeed it proves that Dye Construction Company is not a corporation? Does not proof of an employer's existence establish the basic jurisdictional premise of the Act? Must not an employer exist in order to have a proceeding to penalize that employer?

Appellant's Brief at 15. The question of who must ultimately pay the fine is not before us in this appeal. It is not relevant to establishing the applicability of the Act or the propriety of the penalty assessed.

9. Dye employed at the relevant time a number of workers on various projects including about thirty at the site where the accident occurred.