# UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

UNITED STATES OF AMERICA,

  Plaintiff-Appellee,

v.

VALERIE L. SCHULER,

  Defendant-Appellant.

No. 05-8067

## ORDER ON REHEARING
Filed November 15, 2006

Before **KELLY**, **McKAY**, and **O'BRIEN**, Circuit Judges.


In her combined petition for rehearing and rehearing en banc, Appellant has raised three issues. First, Appellant argues that, in determining whether the trial court should have stricken allegedly prejudicial surplusage from the superceding indictment, the panel incorrectly applied a plain error standard rather than the appropriate abuse of discretion standard. Second, Appellant argues that under the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005), the district court abused its discretion by allowing inclusion of "sentencing enhancement allegations" in the indictment and by submitting them to a jury. Third, Appellant argues that her due process rights were violated by the district court's submission to the jury of these sentencing allegations and by its admission

of summary exhibits.

The panel grants rehearing on the first issue. We conclude that because we overlooked Appellant's pre-trial motion to strike "sentencing enhancement allegations" from the indictment, we erroneously reviewed the district court's ruling under a plain error standard, rather than under an abuse of discretion standard. Under the abuse of discretion standard, we will only disturb the district court's ruling if we have "a definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances." *Moothart v. Bell*, 21 F.3d 1499, 1504 (10th Cir. 1994) (quoting *McEwen v. City of Norman*, 926 F.2d 1539, 1553-54 (10th Cir. 1991)). A trial court's actions are subjected to a higher degree of scrutiny under abuse of discretion than under plain error. However, having reviewed the ruling again under the correct standard, we are satisfied that the district court did not abuse its discretion in refusing to strike the objected-to language from the indictment.

In all other respects, the petition for rehearing is denied. The suggestion for rehearing en banc was circulated to the panel members and the active judges of the court. No member of the panel nor judge in active service on the court having requested a poll, the suggestion for rehearing en banc is denied.

Entered for the Court


Monroe G. McKay
Circuit Judge

-2-

**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**August 14, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

<u>PUBLISH</u>

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

VALERIE L. SCHULER,

      Defendant-Appellant.

No. 05-8067

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF WYOMING**
**(D.C. No. 04-CR-205-B)**

---

Robert T. Moxley, P.C., Cheyenne, Wyoming, for Defendant-Appellant.

Lisa E. Leschuck, Assistant United States Attorney (Matthew H. Mead, United States Attorney, with her on the brief), District of Wyoming, Cheyenne, Wyoming, for Plaintiff-Appellee.

---

Before **KELLY**, **McKAY**, and **O'BRIEN**, Circuit Judges.

---

**McKAY**, Circuit Judge.

---

    "Credit Services guarantees that you will receive Credit Cards with a total credit limit over $10,000.00 . . . . Plus receive your choice of a guaranteed

unsecured Visa, Mastercard or both. No credit check or security deposit. No turn downs! Our banks are waiting!" And so Ms. Schuler's promises rang, enticing individuals through advertisements in various tabloid publications. Ms. Schuler's business consisted of three related business entities, Schuler Financial Services, Summit Financial Group, and Credit Services, Inc. Credit Services, Inc., was incorporated in Wyoming. The overall business was conceived as a for-profit, mass-marketing business to assist individuals with poor credit in obtaining credit cards.

Ms. Schuler purchased demographically-specific mailing lists for use in mass mailings to individuals identified as having bad credit. She also bought advertising space in national, tabloid-type weekly periodicals such as the National Enquirer, Star, and the Weekly World News. Her advertisements, by mail and publication, "guaranteed" that persons responding would receive "unsecured" Mastercard or Visa credit cards. Customers were instructed to send Ms. Schuler (via one of her companies) a sum of money–typically $39.95–by mail. Wyoming-based mailing addresses and forwarding services were used to collect the responses generated by her solicitations, which were then forwarded to her home in Wisconsin. Some of the advertisements contained the following guarantee: "I understand that if I'm not approved by the card issuing bank, I will receive a FULL REFUND."

After sending in their money, customers did not receive a credit card.

Instead, Ms. Schuler would send them a letter containing a list of banks (including their addresses and phone numbers) purported to issue unsecured credit cards, though a number of the banks listed were no longer in business. The letter explained that Ms. Schuler's company was not affiliated with the listed banks and cautioned customers: "Do NOT insist that a particular bank has to issue a credit card to you. They each have their own underwriting guidelines that you need to meet to be approved." In addition, Ms. Schuler's refund policy was enumerated: "Credit Services guarantees you a full refund if you are not approved by THESE card issuing banks. Refunds require three rejections within 90 days of payment." A coupon for an inexpensive Las Vegas vacation often accompanied this letter.

In 2000, complaints began to come into the Wisconsin Department of Financial Institutions regarding Ms. Schuler's business. The Department of Financial Institutions turned its investigation over to the Wisconsin Department of Justice for pursuit of civil remedies. Ultimately, the State of Wisconsin issued a Consent Judgment (to which Ms. Schuler agreed), which permanently enjoined her from operating any "credit services" business in the State of Wisconsin without first registering with the proper authorities. The jury in Ms. Schuler's Wyoming trial was told of this consent judgment.

In August 2003, the Postal Inspection Service sent Ms. Schuler a "cease and desist" letter regarding her ongoing activities in Wyoming. Within days of receiving the "cease and desist" letter, Ms. Schuler moved her dropbox (where

she received the customer mail) from Jackson, Wyoming, to Cheyenne, Wyoming.

By September 2003, a criminal investigation of Ms. Schuler was underway.

Agents from the IRS-Criminal Investigation Division and the Postal Inspection

Service conducted a "trash run" at her Milwaukee, Wisconsin, residence. They

found a journal which she had been keeping. The journal detailed her reaction to

the "cease and desist" letter, which included the following entry on August 12,

2003:

> But I also had time to mull things over and think a little more clearly.
> I had some pretty bad feelings about the misleading mailings,
> knowing full well that people had expectations that weren't being
> met. I feel MUCH better about the CS [Credit Services] letter, and
> once that's cleared up and a disclaimer has been added to the Vegas
> coupon I will truly be good to go. This was a necessary step, I guess,
> to clean up my act. Luckily, the show will go on!

In December 2003, a search warrant was executed at Ms. Schuler's residence and

at her business location in Milwaukee, Wisconsin. Other journals were found as

well as numerous financial records and marketing materials. Also located were

deposit tickets with accompanying customer money orders or personal checks that

were awaiting deposit at the bank. Cash totaling $489 was found, but there was

no corresponding deposit ticket for it. One of Ms. Schuler's journal entries, dated

September 25, 2003, explains her preference for customers sending cash:

> You know what I really like about the CS [Credit Services] mailings?
> When people send in cash! I never have to go to the tyme [ATM]
> machine anymore. [smiley face symbol] And once I have CS mailing
> going out all the time I will always have cash in my pocket. [smiley
> face symbol]

After a jury trial, Ms. Schuler was convicted of twenty-four counts of mail fraud under 18 U.S.C. § 1341. Twenty-four individuals testified at her trial that they had received neither unsecured credit cards nor refunds. Ms. Schuler was also convicted of eleven counts of money laundering under 18 U.S.C. § 1956(a)(1)(A)(I). She was sentenced to sixty months' imprisonment followed by two years' supervised release. Ms. Schuler appeals her conviction and sentence. She claims that the district court erred in (1) sustaining her mail fraud conviction, as a matter of law, (2) failing to strike surplusage from her indictment, (3) admitting character and summary evidence, (4) declining to give her proposed jury instructions, and that (5) cumulative error in her trial deprived her of due process.

In determining whether the evidence presented at trial is sufficient to support a jury verdict, we review the record de novo "and ask only whether, taking the evidence–both direct and circumstantial, together with the reasonable inferences to be drawn therefrom–in the light most favorable to the government, a reasonable jury could find the defendant guilty beyond a reasonable doubt." *United States v. Voss*, 82 F.3d 1521, 1526 (10th Cir. 1996) (quotation omitted).

Ms. Schuler claims that her business did not violate the mail fraud statute because she made no "material" misrepresentations to her customers and, if anything, only had a "defective product." Appellant's Brief at 23. Ms. Schuler's argument is vague and does not specifically address the elements of mail fraud.

We have articulated: "The elements of federal mail fraud as defined in 18 U.S.C. § 1341 are (1) a scheme or artifice to defraud or obtain property by means of false or fraudulent pretenses, representations, or promises, (2) an intent to defraud, and (3) use of the mails to execute the scheme." *United States v. Welch*, 327 F.3d 1081, 1104 (10th Cir. 2003).

As to the first element, the scheme or artifice to defraud, we have stated that the scheme must be described with particularity and that "it is not sufficient in this regard to merely plead the statutory language." *United States v. Curtis*, 506 F.2d 985, 990 (10th Cir. 1974). It is necessary that "the nature of the schemes or artifices is identified or described, including the particular pretenses, representations or promises claimed to have been false." *Id*. In the indictment of Ms. Schuler, a full four pages allege in great detail the nature of her scheme. The jury was also carefully instructed on the meaning of the first element of mail fraud. Instruction No. 33 explained that mail fraud may be proved either by "executing and attempting to execute a scheme to defraud" or "for obtaining money by means of false and fraudulent pretenses, representations and promises." The instruction concludes:

> Thus, in order for you to find the Defendant, Valerie L. Schuler guilty of Counts [ ], of the Superseding Indictment, you must find beyond a reasonable doubt that at least one of these two purposes were the objects of such crimes, but you need not find that both of these purposes were objects of such offenses.

In *Welch*, we discussed what the second element–intent to defraud–means

in terms of mail fraud:

> Because direct proof of fraudulent intent often is unavailable, courts have long permitted fact finders to rely on a variety of circumstantial evidence, including evidence of actual or contemplated harm, to infer such intent. . . . Intent to defraud may be inferred from the defendant's misrepresentations, knowledge of a false statement as well as whether the defendant profited or converted money to his own use.

327 F.3d at 1105 (quotation omitted). In this case, the evidence of Ms. Schuler's intent to defraud was vast. In her recovered journal and diaries, she admitted that she was misleading people who were not getting what they expected: "guaranteed approval" for Visa/MasterCard credit cards at stated unsecured limits as contained in her solicitations and advertisements. Ms. Schuler's Wisconsin Consent Judgment put her on notice that her business had problems and that she could no longer operate in Wisconsin. Moreover, the jury was entitled to infer that Ms. Schuler's relocating her business address at various points was an attempt to evade investigation by authorities. Finally, Ms. Schuler made material misrepresentations by stating in advertisements and in mailings that "our banks are waiting" and "no turn-downs"– statements likely to induce customers to send her money. *See United States v. Lawrence*, 405 F.3d 888, 901 (10th Cir. 2005) (stating that the jury must decide whether a statement is material, that is, whether the statement "has a natural tendency to influence, or is capable of influencing a decision or action by another").

Ms. Schuler concedes the use of the mails in this case. Thus, we determine

-7-

that the jury had sufficient evidence on each of the three elements to convict for mail fraud.

Ms. Schuler also contests various individual counts of mail fraud, claiming that the testimony of individuals could not sustain her conviction on these counts. Her argument appears to be that the individuals who testified could have obtained a refund but simply did not choose to do so. For our purposes, it is irrelevant whether these individuals could have obtained a refund. Ms. Schuler violated the mail fraud statute in each of these instances in her intent to defraud these individuals (her customers), by a scheme, through use of the mail. In addition, Ms. Schuler's reliance on her argument that the testifying customers could have obtained a refund is curious, since mail fraud "does not require successful completion of the scheme to defraud." *United States v. Stewart*, 872 F.2d 957, 960 (10th Cir.1989). Indeed, "actual showing of loss is not required; the [mail fraud] statute prohibits schemes intended to deprive victims of money or property." *Id*. at 960-61 (citation omitted).

Ms. Schuler next argues that the superseding indictment contained prejudicial surplusage. In the superseding indictment, the prosecution states in "Allegations Common to Counts One Through Twenty-Nine":

> VALERIE L. SCHULER . . . knowingly devised and intended to devise a scheme and artifice to defraud and to obtain money by means of false and fraudulent pretenses, representations, and promises, in an amount totaling $400,000.00 and involving in excess of 250 victims, which scheme was furthered by the use of the United

-8-

States mail.

At trial, however, only twenty-four individuals testified that they had been duped by her scheme. In Ms. Schuler's brief, she states: "*A fortiori*, the sentencing allegations in the Superceding Indictment herein, which magnified the counts themselves by hundred-folds, were inflammatory and prejudicial." Appellant's Brief at 40.

Federal Rule of Criminal Procedure 7(d) reads: "Surplusage. Upon the defendant's motion, the court may strike surplusage from the indictment or information." We have held: "Acting in its discretion, a district court may strike as surplusage allegations not relevant to the charge at issue and inflammatory and prejudicial to the defendant." *United States v. Collins*, 920 F.2d 619, 631 (10th Cir. 1990). However, a review of the record shows that Ms. Schuler did not file a pre-trial motion requesting dismissal of the surplusage from the superseding indictment; thus we review for plain error.

"Plain error occurs when there is (1) error, (2) that is plain, which (3) affects substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Gonzalez-Huerta*, 403 F.3d 727, 731 (10th Cir. 2005) (quotation omitted). We do not determine that the surplusage in the superseding indictment constitutes plain error. *See United States v. Peters*, 435 F.3d 746, 753 (7th Cir. 2006) ("Thus, the surplusage in the superseding indictment did not lead the jury to convict . . . where otherwise it

would not, and we find no plain error in the superceding indictment."). Indeed, we have often held surplusage in an indictment may be disregarded. *See, e.g.*, *Dye Constr. Co. v. Occupational Safety & Health Review Comm'n*, 698 F.2d 423, 426 (10th Cir. 1983); *United States v. Henry*, 504 F.2d 1335, 1338-39 (10th Cir. 1974). We note Ms. Schuler's reliance on *United States v. Zabawa*, 39 F.3d 279, 285 (10th Cir. 1994), where we held that it was within the district court's discretion to strike "6,708 victims" from an indictment when the prosecution had identified only thirty. However, our holding in *Zabawa* affirmed the district court's discretion to strike inflammatory surplusage from an indictment after a Rule 7(d) motion was made; it does not lead us to find plain error where no such motion was made at trial and where the surplusage was less (by a factor of ten) inflammatory.

As to the rest of Ms. Schuler's claims that the district court erred in evidentiary rulings, we review for abuse of discretion. *United States v. Curtis*, 344 F.3d 1057, 1067 (10th Cir. 2003). "Under that standard, we will not disturb an evidentiary ruling absent a distinct showing that it was based on a clearly erroneous finding of fact or an erroneous conclusion of law or manifests a clear error in judgment." *United States v. Jenkins*, 313 F.3d 549, 559 (10th Cir. 2002).

It is difficult to discern Ms. Schuler's exact objection to the summary exhibits used by the prosecution in her trial. In her brief, her counsel states that "[t]here is no basis, other than grade-school math, for the assertion that because

24 persons with bad credit could not obtain a credit card, as charged in the individual counts, then every person who obtained Valerie Schuler's services must also be a 'victim.'" Appellant's Brief at 41-42. The summary exhibits presented in her trial represented the distillation of thousands of pages of financial records and documents pertaining to Ms. Schuler. Ultimately, the summaries aided the jury by enumerating by date, by customer name and location, and by the amount of money received by Ms. Schuler. An IRS Special Agent created the summary exhibits, and he explained to the jury their contents and his method of compilation. He testified as to his efforts to ensure that no bounced checks were included in the summary. The Special Agent was also subject to cross-examination.

Federal Rule of Evidence 1006 allows the use of summaries when "[t]he contents of voluminous writings, recordings, or photographs . . . cannot conveniently be examined in court . . . ." We have further observed that while "[t]he materials upon which the summary is based need not themselves be admitted into evidence[,] . . . [a]dmission of summaries, however, is conditioned on the requirement that the evidence upon which they are based, if not admitted, must be admissible." *United States v. Samaniego*, 187 F.3d 1222, 1223 (10th Cir. 1999) (citation omitted). Use of summary exhibits was proper in light of the voluminous financial records which they summarized. Importantly, the underlying financial records were admissible and were in fact admitted into

evidence. All such financial records were made available to Ms. Schuler in advance of trial. Therefore, we conclude that the district court did not err in allowing the use of summary exhibits.

Ms. Schuler next contends that her cross-examination on previous instances of credit card fraud and identity theft was improper under Federal Rule of Evidence 404(b) as it constituted the improper use of character evidence and of uncharged crimes. At trial, Ms. Schuler was cross-examined about her use of a false tax return to secure financing for her home as well as providing a false social security number as part of her application for credit cards.

Once a defendant takes the stand, her credibility is at issue as with any other witness. *United States v. Girdner*, 773 F.2d 257, 261 (10th Cir. 1985). Consequently, under Federal Rule of Evidence 608(b), it is within the discretion of the district court to decide whether a defendant may be cross-examined about prior conduct concerning her character for truthfulness, subject always to the balancing test of Federal Rule of Evidence 403. In addition, Rule 608(b) states: "Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' character for truthfulness [a collateral matter] . . . may not be proved by extrinsic evidence." We have observed that "[a] matter is collateral if it could not have been introduced in evidence for any purpose other than impeachment." *United States v. Olivio*, 80 F.3d 1466, 1471 (10th Cir. 1996) (citing *United States v. Walker*, 930 F.2d 789, 791 (10th Cir. 1991)). In this case,

-12-

the false tax return and credit card applications were not collateral because they had already been admitted into evidence by stipulation of Ms. Schuler and through another witness. It was, therefore, not improper for the prosecution to question Ms. Schuler about this extrinsic evidence.

The last of Ms. Schuler's evidentiary arguments is that she was denied the opportunity to confront Ms. Kathryn McKee, who testified as the prosecution's sole rebuttal witness. Ms. McKee testified via telephone. Her testimony was quite short and simply concerned the numerical digits contained in her social security number. The prosecution apparently introduced this testimony to impeach Ms. Schuler's credibility because she had previously used a social security number matching Ms. McKee's in order to obtain a credit card. Ms. Schuler contends that Ms. McKee's testimony violates the Confrontation Clause because Ms. McKee was not present in the courtroom during her testimony.

The Confrontation Clause guarantees to all criminal defendants "'[t]he right physically to face those who testify against him, and the right to conduct cross-examination.'" *United States v. Sunrhodes*, 831 F.2d 1537, 1543 (10th Cir. 1987) (quoting *Pennsylvania v. Richie*, 480 U.S. 39, 51 (1987)). Alleged errors based upon the Confrontation Clause are subject to harmless-error analysis. *United States v. Toles*, 297 F.3d 959, 967-68 (10th Cir. 2002). To preserve the right for constitutional harmless error review, a defendant must lodge an objection based upon her Sixth Amendment right to confrontation. *United States v. Lott,* 310 F.3d

1231, 1241 n.6 (10th Cir. 2002).

Ms. Schuler did not object to Ms. McKee's testimony at trial, although the matter was addressed during a jury instruction conference. Nevertheless, it was not error for Ms. McKee to testify by telephone because she took an oath, was subject to cross-examination, and critically, her testimony (the digits of her social security number) was uncontroverted and subject to a finding of "absolute proof" by the district court. In such an instance, there was no harm in denying the opportunity for face-to-face confrontation.

We have endeavored to parse Ms. Schuler's arguments as to the insufficiency of the jury instructions given at her trial. "We review a jury instruction de novo, when an objection is made at trial . . . ." *United States v. Fabiano*, 169 F.3d 1299, 1302 (10th Cir. 1999). In conducting this review, we consider the jury instructions as a whole to determine whether they "cover the issues presented by the evidence" and accurately state the law. *United States v. Davis*, 953 F.2d 1482, 1492 (10th Cir. 1992). Reversal of a conviction is warranted only where the failure to give an instruction is prejudicial in view of the entire record. *United States v. Martin*, 18 F.3d 1515, 1519 (10th Cir. 1994).

Ms. Schuler claims that the district court generally and improperly rejected her "theory of defense" and "burden of proof" instructions. But she has not identified which specific "theory of defense" instruction(s) she believes the district court erred in not giving, nor does she provide any legal argument with

-14-

respect to why her tendered "theory of defense" instruction(s) were (1) proper statements of the law, (2) not covered by other instructions actually given by the court, and (3) were not impermissibly argumentative.

As best as can be determined from Ms. Schuler's brief, she is concerned with the instructions which were discussed at the instruction conference. Her proposed instructions "Nos. 8 and 9" concern how the jury should consider her consent judgment in Wisconsin. The district court gave an instruction on this issue, Instruction No. 20, which is quite adequate. Ms. Schuler also has not provided any argument concerning why the court's instructions on the Wisconsin judgment were in any respect inaccurate or prejudicial. Given the district court's substantial discretion in fashioning jury instructions, *see United States v. Wolny*, 133 F.3d 758, 765 (10th Cir. 1998), we do not see how this instruction either misstated the facts or law, or was in any other respect unfair to Ms. Schuler.

Ms. Schuler's proposed instruction No. 10 concerns her relocation of some portion of her business from Wisconsin to Wyoming. This instruction is "argument" and not instruction: "[T]he government cannot use the move of Ms. Schuler's business to Wyoming as evidence of guilty knowledge, if that move to Wyoming could be motivated by an innocent or legitimate purpose." This is nothing more than a recapitulation of the evidence in the light most favorable to Ms. Schuler. Such an instruction is not appropriate, and the district court committed no error in rejecting the proposed instruction. *See Davis*, 953 F.2d at

-15-

1492.

Ms. Schuler argues that the district court failed to give her instruction on the meaning of "guarantee." This is so. Nevertheless, the term itself is not a technical one, and it does not require a specific definition in the instructions in order for the jury to understand its usage in this case. *See*, *e.g.*, *United States v. Robinson*, 435 F.3d 1244, 1249-50 (10th Cir. 2006) (noting that it was not plain error for the court to refuse including in instructions terms of general and common understanding).

In sum, while Ms. Schuler may fly-speck the instructions on the bases that the court did not ultimately give all of the ones she submitted or that some were not worded in precisely the fashion she might have preferred, she has not shown that the district court's refusal to give even one of her instructions was incorrect as a matter of law, or was prejudicial or unfair.

Last, Ms. Schuler claims that the effect of cumulative error at her trial mandates that her conviction be reversed. "A cumulative-error analysis merely aggregates all the errors that individually have been found to be harmless, and therefore not reversible, and it analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless." *United States v. Rivera*, 900 F.2d 1462, 1470 (10th Cir. 1990). In our analysis, we review "only actual errors to determine their cumulative effect." *Id*. Our review of Ms. Schuler's appeal does not yield instances of error, thus we

-16-

do not determine that there was cumulative error.

Consequently, we **AFFIRM** the judgment of the district court.