**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 28, 2009**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

<table>
<tr><td>

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

EDGAR FERNANDO
BELTRAN-GARCIA; MARTIN C.
MENDOZA-CASTILLO,

    Defendants-Appellants.

</td><td>

Nos. 07-4237 & 07-4246

(D.C. No. 2:05-CR-00692-DAK)

(D. Utah)

</td></tr>
</table>

**ORDER & JUDGMENT**[*]

Before **HENRY**, Chief Judge, and **HARTZ** and **O'BRIEN**, Circuit Judges.[**]

Rejecting Edgar Beltran-Garcia's ("Mr. Beltran") and Martin Mendoza-

Castillo's ("Mr. Mendoza") claims that they were uninvolved in the drug deal for

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[**]After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of Edgar Beltran-Garcia's appeal, Case No. 07-4237. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). This case is therefore ordered submitted without oral argument.

which they were arrested, a jury in Utah convicted of them both of aiding and abetting possession, with intent to distribute, Schedule II controlled substances (methamphetamine and cocaine) in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. At trial, an undercover officer ("Officer M.R."), who purchased the drugs from another man in the defendants' presence, identified Mr. Beltran and Mr. Mendoza as participating in the transaction. The defendants sought to impeach Officer M.R.'s testimony by asking questions about his misconduct during a separate, unrelated incident four years earlier. Based on an internal investigation of the unrelated incident, the police department had reprimanded the undercover officer for exchanging heated words with and threatening to fight a suspect, and for allowing a search to continue that violated the Fourth Amendment.

Additionally, the officer had failed to include these relevant facts in his subsequent police report nor had he included an explanation for the head wound that the suspect received as the officer transported him to a patrol car. The district court refused to allow the impeachment inquiry. The defendants argue that the district court abused its discretion in excluding the evidence under the federal rules, and that excluding this evidence violated their constitutional confrontation rights. Mr. Beltran also argues that he is entitled to resentencing because the district court failed to offer him an allocution opportunity.

Exercising jurisdiction under 28 U.S.C. § 1291, we affirm the convictions, but remand Mr. Beltran's case for resentencing.

## I. BACKGROUND

Police arrested Mr. Beltran and Mr. Mendoza following an undercover purchase of methamphetamine in a Lowe's parking lot on September 7, 2005. The defendants do not dispute that a purchase took place, but they argue that they were not involved.

### A.  Police arrested the defendants after an undercover investigation.

Initially, a confidential informant introduced Officer M.R., to another man, Juan Ramirez-Navarette ("Mr. Ramirez") in order to set up a drug transaction. Officer M.R. at the time worked for the Midvale City Police Department, assigned to a DEA narcotics task force.  Officer M.R. purchased drugs from Mr. Ramirez twice, the first time with the confidential informant's assistance.  The first transaction occurred on September 1, 2005.  Mr. Ramirez arrived in a grey Acura with Mr. Beltran driving.  Two unidentified people sat in the back of the Acura, though no evidence suggested Mr. Mendoza was involved in this deal.

Officer M.R. set up the second transaction with Mr. Ramirez without the assistance of the confidential informant.  Mr. Ramirez arrived, at the agreed upon point, riding in the front passenger seat of a Jeep Cherokee.  Mr. Beltran drove

the Jeep. Another man, Jose Martinez-Martinez ("Mr. Martinez") sat in the backseat behind the driver, while Mr. Mendoza sat behind Mr. Ramirez.

According to Officer M.R.'s account, when he approached the car, Mr. Beltran told him to "get in." Once in the car, the officer sat behind Mr. Ramirez, with Mr. Mendoza sliding to the middle. Officer M.R. testified that he negotiated with Mr. Ramirez, in English, to purchase two ounces of methamphetamine. During the negotiations, Mr. Beltran turned around in the driver's seat and made eye contact with the officer. Mr. Ramirez asked for $1,500. The officer said he only had $1,400. According to Officer M.R.'s testimony, Mr. Beltran then turned to Mr. Ramirez, said "fourteen" in Spanish, and nodded. Mr. Ramirez said, "Okay," and instructed Mr. Martinez to give the officer two ounces. Mr. Martinez reached into a black toiletry bag that was between his legs on the floor. He pulled out three blue cellophane packages and handed them to Mr. Mendoza, who then handed them to Officer M.R. Laboratory tests showed that the packages contained 53.3 grams of methamphetamine.

Though Officer M.R. wore a wire during the transaction, the wire did not pickup any of Mr. Beltran's alleged comments. Video tapes of the transaction similarly did not corroborate the officer's account, as they failed even to show the officer getting into the Jeep. (The video was referenced during testimony but never introduced as an exhibit.)

After the Jeep left the parking lot, officers pulled the vehicle over and arrested its occupants. Mr. Ramirez had the $1,400 in marked money in his pocket. Mr. Beltran had $2,251 in cash in his pocket. In the weeds next to the vehicle, the officers found a black bag containing 49.3 grams of methamphetamine and 71.2 grams of cocaine.

Officers interviewed the defendants after the stop and allegedly obtained confessions from both Mr. Beltran and Mr. Mendoza. A DEA agent interviewed Mr. Beltran and testified that Mr. Beltran confessed that he had picked up an ounce and a half of methamphetamine and three ounces of cocaine from a supplier that morning. He gave the supplier $1,800. Mr. Beltran then went to an apartment to pick up a black bag to hold the drugs. Mr. Beltran, after getting the black bag, picked up Mr. Mendoza. They went to a business called Victor's Tires, which has a small restaurant in it. They ate and then stood by for a call to make a delivery.

An officer working with the DEA task force, Officer Ron Colman, questioned Mr. Mendoza in Spanish. Officer Colman testified Mr. Mendoza said he was riding in the Jeep to accompany the people who were selling drugs. In exchange, he received food and alcohol. At trial, Mr. Mendoza attacked Officer Colman's testimony by arguing that the notes Officer Colman relied on to refresh his memory of the interview were incorrect, because at times the notes referred to Mr. Mendoza as Mr. Martinez. Officer Colman admitted that he had copy-pasted

part of his report from his interview with Mr. Martinez without changing the names. Beltran's Rec. vol. V, doc. 178, at 170. Officer Colman maintained that the substance of the report was still accurate.

Mr. Ramirez eventually pleaded guilty. During his debriefing with the government, he said the other three men were not involved in the drug deal.

After Mr. Ramirez and Mr. Martinez pleaded guilty, Mr. Beltran and Mr. Mendoza were tried together. At trial, Mr. Ramirez testified for the defendants, claiming that he called Mr. Beltran for a ride but that he did not tell Mr. Beltran of the planned drug-transaction. Mr. Ramirez testified that the drugs were in his pants, not in the black bag that Officer M.R. identified.

Mr. Mendoza testified that Mr. Beltran went to Mr. Mendoza's house to sell a car and invited him to lunch. After lunch, Mr. Beltran gave some people a ride, stopping in the Lowe's parking lot. Officer M.R. did not get in the car, and Mr. Mendoza did not know what he and Mr. Ramirez were talking about. Mr. Mendoza denied telling agents he worked for people selling drugs and in return received food and alcohol.

## B. The defendants attempted to impeach Officer M.R. based on prior misconduct.

At trial, Mr. Beltran and Mr. Mendoza sought to cross-examine Officer M.R. about a disciplinary proceeding against him while he worked for the West

Valley City Police Department. According to a complaint by a fellow police officer, Officer M.R. previously acted improperly while investigating a report about drug activity on May 12, 2001. Police received an anonymous tip about drug activity at a residence where two people lived as roommates. Officer M.R. arrested one of the individuals who became belligerent and abusive. Officer M.R. placed the suspect in handcuffs, and the suspect told him he would "kick his ass if he took off his badge." Mendoza's Rec. vol. II, doc. 76, at 3. Officer M.R., either accepting the challenge or calling the bluff, "removed the handcuffs, stepped back, then said, 'Come on. If you want to do anything, this is the time.'" *Id.* Officer M.R. admitted to the incident after being questioned about it, saying it was a "lapse in judgment." *Id.* The suspect later sustained a cut above his temple and lump on the corner of his eye while Officer M.R. escorted him to a patrol car. Officer M.R. claimed the suspect tried to flee, causing the officer to fall over and drag the suspect down with him. The suspect claimed he received the injuries when Officer M.R. hit him in the face three times and kneeled on his neck.

Additionally, the complaint reported that Officer M.R. attempted an illegal search of one of the rooms in the house. According to the complaining officer, only one of the roommates consented to a search of the house; therefore, officers were not authorized to search the other roommate's room. At first, Officer M.R. claimed that the consent covered the whole house including the room in question. The complaining officer told Officer M.R. that the consent clearly did not cover

the room.  Later, the complaining officer found Officer M.R. in the room while two other officers searched it.  Officer M.R. claimed that the other officers began searching the room and that he had only just seen them.

An adjudication from the commanding officer sustained the allegations against Officer M.R.  Thus, an investigation confirmed that Officer M.R. had acted improperly regarding the arrest and the illegal search.  Additionally, the adjudication noted that Officer M.R.'s report regarding the arrest was inadequate and "[did] not accurately reflect all the circumstances of this incident."  *Id.* at 13.  Specifically, Officer M.R.'s report did not include descriptions of the altercation, the use of force against the suspect, the injuries the suspect sustained, or the search.  Additionally, the report "failed to acknowledge that approximately $400 in US currency was located at the residence, and no disposition of the money was included in the report."  *Id.* at 12-13.  The officer resigned his post with the West Valley City Police Department in June of 2001.

## C. The district court refused to allow questioning based on the prior misconduct; the defendants were found guilty.

The United States initially filed a motion for a protective order to prohibit disclosure of Officer M.R.'s misconduct.  The court granted the motion saying that it would determine the admissibility of the evidence at a later date, but before trial began.  As the court did not hold a hearing before trial, counsel for Mr.

Beltran attempted to cross-examine the officer regarding the misconduct. The United States objected, and the court refused to allow the testimony saying:

> It was my impression that we would deal with this in some preliminary way, and you have never raised it, so I'm not going to let you get into it . . . . I thought it was going to be handled preliminarily. It's fairly old, and I don't see where it relates to this case now.

Beltran's Rec. vol. IV, doc. 177, at 70, 72.

The next day, the defendants asked the court to reconsider its ruling. Counsel for Mr. Beltran told the court that he had no intention of going into the sustained allegations that were not relevant to Officer M.R.'s credibility—his alleged assault on a prisoner and the subsequent injury to the prisoner; rather, he only planned on inquiring into areas that did go to his credibility—his claim that consent was given to search a home where it was not and his submission of a report that failed to accurately reflect material circumstances of the incident. The court reiterated its assumption that the issue would have been dealt with pretrial. The court also said that the evidence was possibly stale in that the incidents occurred four or five years ago and that the court was "not sure it's relevant." *Id.* vol. V, doc. 178, at 196-97. Thus, the court excluded evidence of the officer's disciplinary problems.

The jury found Mr. Beltran and Mr. Mendoza guilty of multiple counts of drug distribution, based on both the amount sold to Officer M.R. and the amount of drugs found in the weeds near the vehicle. *Id.* vol. I, doc. 128, at 3-5.

**D. Mr. Beltran was sentenced without allocution, and both defendants appealed.**

Mr. Beltran's presentence report calculated a total offense level of 32 under the federal sentencing guidelines. The report assigned a criminal history category of VI, finding that Mr. Beltran had 13 criminal history points. Two of the 13 points stemmed from a conviction for driving under the influence, an offense Mr. Beltran committed when he was seventeen. A total offense level of 32 and criminal history category of VI produced a guideline range of 210 to 262 months. Neither Mr. Beltran nor the government objected to the presentence report.

At sentencing, the district court varied from the 210-month low end of the guideline range. The district court imposed a 180-month sentence, stating: "Under the 3553 factors in terms of the need of deterrence, rehabilitation, punishment and respect for the law, I'm going to give him 180 months . . . . I think it's very sufficient." *Id.* vol. VIII, doc. 229, at 15. Had the court excluded the underage conviction from the guideline calculation, Mr. Beltran contends that the low end of the guideline range would have been 188 months. At sentencing, the court did not give Mr. Beltran an opportunity to allocute, nor did the court ascertain whether Mr. Beltran had read the presentence report or discussed it with his attorney. Mr. Beltran, at the time, did not raise an objection based on the lack of an allocution opportunity.

The court sentenced Mendoza to 121 months of imprisonment and 60 months of supervised release. Mr. Ramirez had previously pleaded guilty and received a 70-month sentence, in part because of his lack of criminal history. *Id.* at 8.

Mr. Beltran and Mr. Mendoza now appeal the district court's decision to exclude the evidence of the officer's misconduct. They argue that the court abused its discretion under the rules of evidence and that the exclusion of the evidence violated their confrontation rights under the Sixth Amendment. Mr. Beltran argues as well that his sentencing was improper based on the court's failure to allow him to allocute.

## II. DISCUSSION

The district court did not err in excluding evidence of Officer M.R.'s misconduct. The allegations against the officer would be admissible to the extent they showed untruthfulness, subject to certain balancing. Nonetheless, the district court was within its discretion to determine that the prejudicial effect of the evidence outweighed its probative value, especially considering its staleness. Additionally, the exclusion did not violate the defendants' confrontation rights. Without mentioning the allegations, the defendants had a sufficient opportunity to cross-examine the officer. Finally, the district court erred in denying Mr. Beltran

an opportunity for allocution.  We therefore affirm the convictions but remand with instructions to resentence Mr. Beltran.

**A.  The district court did not abuse its discretion under Fed. R. Evid. 608(b) in excluding evidence of the officer's misconduct.**

This court reviews a trial court's ruling on evidentiary matters for abuse of discretion.  *United States v. Benally*, 541 F.3d 990, 994 (10th Cir. 2008).  Under this standard, the court will not disturb a trial court's decision unless there exists a "definite and firm conviction that the trial court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances."  *United States v. Talamante*, 981 F.2d 1153, 1155 (10th Cir. 1992).  The court also will reverse "only if any error affected the substantial rights of the accused."  *United States v. Jones*, 213 F.3d 1253, 1261 (10th Cir. 2000).

Under Federal Rule of Evidence 608(b), specific unrelated instances of a witness's prior misconduct may be used to impeach the witness at the discretion of the court, however, only to the extent the misconduct reflects on the witness's character for truthfulness.  Fed. R. Evid. 608(b) ("Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' character for truthfulness . . . may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness . . . .").  Furthermore, parties may only introduce specific instances

by asking the witness on cross-examination about the incident, not by introducing documents or calling other witnesses. *Id.*; *United States v. Velarde*, 485 F.3d 553, 561 (10th Cir. 2007). Though Rule 608 does not explicitly specify how the trial court should exercise its discretion, the discretion must be exercised within the ambit of the other rules of evidence, including Rules 401, 402, and 403, which address the relevance and probative value of possible evidence. *See United States v. Whitmore*, 359 F.3d 609, 619 (D.C. Cir. 2004). The notes, from the federal rules of evidence advisory committee, also suggest in more detail how a court should exercise its discretion:

> Effective cross-examination demands that some allowance be made for going into matters of this kind, but the possibilities of abuse are substantial. Consequently safeguards are erected in the form of specific requirements that the instances inquired into be probative of truthfulness or its opposite and not remote in time. Also, the overriding protection of Rule 403 requires that probative value not be outweighed by danger of unfair prejudice, confusion of issues, or misleading the jury.

Fed. R. Evid. 608, advisory committee notes. These committee notes are entitled to respectful consideration. *Tome v. United States*, 513 U.S. 150, 160 (1995).

In this case, under Rule 608(b), evidence of Officer M.R.'s prior misconduct is admissible, but the district judge had discretion to exclude it. Evidence is relevant and therefore admissible if it has any tendency to make a fact of consequence more or less likely. Fed. R. Evid. 401-02. The officer's character for truthfulness is clearly consequential because his testimony in addition to the

- 13 -

alleged confession and the circumstances of the arrest led to the defendants' convictions. *Cf. United States v. Schuler*, 458 F.3d 1148, 1155 (10th Cir. 2006) ("Once a defendant takes the stand, her credibility is at issue as with any other witness."). The applicable relevant evidence tending to affect Officer M.R.'s character for truthfulness includes (1) Officer M.R.'s alleged misrepresentation of the extent of consent given to search a house and (2) the omissions in Officer M.R.'s report of material facts. This evidence has some tendency to reflect on his character for truthfulness.

At our oral argument, the government agreed that the court could have allowed evidence of the inadequate report without going into the facts. In response to a question from the panel, "Do you think the only [question that] would be proper on cross-examination without getting into collateral evidence would be 'Did you fail to disclose important information in a report you made five years ago?'" the government answered, "Right, and you could have asked that question." The government was worried that the defendants would not ask the question without getting into the collateral bad behavior, creating a trial within a trial. In their motion to reconsider though, the defendants made clear that they did not intend to get into the facts reflecting poor judgment, only those reflecting character for truthfulness. Relevance concerns alone do not suffice to exclude this evidence.

The district court, however, properly exercised its discretion under Rules 403 and 608(b) when it excluded the evidence. A court may exclude evidence if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403. In order to exclude testimony under Rule 403, a court must conduct a balancing test, although the court need not make specific findings. *See United States v. Howell*, 285 F.3d 1263, 1269-70 (10th Cir. 2002).

The trial court did not cite Rule 403 explicitly, but did express that the remoteness in time of the evidence affected its consideration. Under the circumstances, we are satisfied the district court conducted a proper balancing test to exclude the evidence. Several times the district court mentioned its concern that the allegations were too old. The prior sustained allegations were approximately four years old at the time of the arrest, which is less than the amount of time for admission of prior convictions under Rule 609, as Mr. Beltran and Mr. Mendoza point out. Fed. R. Evid. 609. Nonetheless, remoteness in time affected the probative nature of the evidence.

Additionally the misconduct occurred under different circumstances, during an arrest at a residence that did not involve undercover work, and while the misconduct report raises concerns about the officer's judgment four years earlier, it does not probatively reflect on Officer M.R.'s current character for truthfulness.

The adjudicatory memo concludes that Officer M.R.'s report was inadequate and therefore possibly misleading, but the memo does not suggest a dishonest motive behind the omissions. Further, the details of the search incident are vague and do not indicate Officer M.R. intentionally mislead the complaining officer.

In addition to the lack of probative value, the evidence carried with it a risk of misleading the jury and confusing the issues. The restrictions in Rule 608 exist to prevent mini-trials on side issues that make it more difficult for the jury to render an impartial decision. *Velarde*, 485 F.3d at 561. Here, the details of the allegations, if admitted in the course of questioning, could improperly prejudice the jury against Officer M.R. based on his lack of judgment instead of his character for truthfulness. Because the misconduct does not obviously reflect on Officer M.R.'s current character for truthfulness, its introduction would more likely required extended explanation increasing the risk of jury confusion. Though the district court could have dealt with these risks by allowing appropriately circumscribed questions, under the circumstances, the district court did not abuse its discretion under Rules 608(b) and 403 to exclude the evidence as lacking in probative value and creating a risk of confusion and prejudice.

The defendants argue that the district court should have used means other than exclusion to guard against unfair prejudice or confusion of the issues. *See* Mendoza's Br. at 25; *cf. Whitmore*, 359 F.3d at 621 ("The district court here could have adequately guarded against any risk of unfair prejudice or undue delay

by limiting cross-examination, by giving limiting instructions to the jury and by setting reasonable parameters on the government's rehabilitation . . . ." (citation omitted)).  Indeed, the district court could have cabined the questioning to allow the testimony.  If the court was unsure whether to allow the questions, it could have questioned the witness outside the presence of the jury to see if his answers confirmed that the questions reflected on the witness's character for truthfulness. *E.g.*, *United States v. Crowley*, 318 F.3d 401, 417-18 (2d Cir. 2003).  The mere fact that the court has such discretion, however, does not mean that the court abused its discretion in declining to exercise it.

The defendants have also argued that the officer's testimony about his background incorrectly created the impression that he was a model police officer and that the evidence of the prior misconduct was necessary to correct that mistaken impression. *See* Beltran's Rec. vol. IV, doc. 177 at 70.  ("[Mr. Beltran's counsel]: . . . I think [the government] opened this up by laying out what a super hero he is with respect to drug offenses.").  The district court rejected this argument saying that Officer M.R.'s testimony was "actually fairly standard background stuff." *Id.*  The officer testified:

> I have been a police officer for approximately 11 years.  In that time, I have received training through the police academy, when I first started.  I've also attended several in-service training classes involving the recognition and what narcotics look like and their effects.  I have been certified in methamphetamine clandestine lab for the last six years. I've performed drug-related arrests, where large quantities of

methamphetamine, cocaine, heroin, and marijuana, and other controlled substances were discovered.

I've written somewhere in the neighborhood of 50 to 60 narcotics-related search warrants where both small and large quantities of illegal narcotics were discovered.

Beltran's Rec. vol. IV, doc. 177, at 16. Officer M.R. also testified without elaboration that he participated in narcotics investigations and undercover investigations. One can certainly imagine testimony, even "fairly standard background stuff," that would require correction and introduction of additional background information; however, in this case, the testimony did not go far enough to require additional testimony to correct a mistaken impression. The government did not dwell on the officer's length of service or expertise or otherwise use the officer's background to suggest that the jury should afford the officer's testimony undue weight. In such circumstances, it was proper to exclude the additional background evidence.

**B. The district court did not violate Mr. Beltran's and Mr. Mendoza's constitutional confrontation rights.**

**1. Standard of Review**

When a defendant makes a Confrontation Clause objection at trial, this court reviews the claim de novo. *United States v. Joe*, 8 F.3d 1488, 1492 (10th Cir. 1993) (citing *United States v. Ellzey*, 936 F.2d 492, 495 (10th Cir. 1991)). In doing so, we examine first whether the district court erred and then examine

whether the government has proven the error was harmless beyond a reasonable doubt. *United States v. Montelongo*, 420 F.3d 1169, 1173 (10th Cir. 2005). The parties' briefs suggest this harmless error analysis applies. Aple's Br. at 32; Mendoza's Br. at 17. However, at oral argument, the government argued in favor of plain error review because although the defendants objected to the exclusion of the evidence twice, they only explicitly raised the Confrontation Clause in a motion for a new trial. Generally, when defendants do not make a specific Confrontation Clause objection at trial, we review for plain error. *United States v. Perez*, 989 F.2d 1574, 1582 (10th Cir. 1993) (en banc); *see also United States v. Garcia*, 994 F.2d 1499, 1505-06 (10th Cir. 1993). "To constitute plain error under the Confrontation Clause, the constitutional error must be (1) obvious, and (2) 'affect[ ] substantial rights.'" *Perez*, 989 F.2d at 1583 (emphasis omitted) (quoting Fed. R. Crim. P. 52(b)). In a similar circumstance, we applied harmless error review because a party's arguments repeatedly "emphasiz[ed] his inability to cross-examine" the witness. *United States v. Summers*, 414 F.3d 1287, 1297 n.7 (10th Cir. 2005) ("However, in repeatedly emphasizing his inability to cross-examine Mohammed we find that Mr. Thomas effectively preserved the Confrontation Clause error for review."). Because under any standard of review, there was no error, we will assume without deciding that harmless error review applies.

**2. The defendants had an opportunity to cross-examine Officer M.R. effectively.**

Although the right to cross-examination is an important and integral component of the broader Sixth Amendment right to confrontation, it is not absolute, nor without limitation. *United States v. Oliver*, 278 F.3d 1035, 1041 (10th Cir. 2001). A trial court "may impose reasonable limitations on cross examination, based upon concerns of 'harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant.'" *Id.* (citing *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986)). These concerns are quite similar to those contained in the Rule 403 analysis discussed above. *See United States v. Walker*, 930 F.2d 789, 792 (10th Cir. 1991) ("[A] proper Rule 403 ruling will [not] subsume the constitutional issue, but [Rule 403] does identify the types of competing interests a court may consider in determining the proper constitutional limits to a defendant's Sixth Amendment right to confrontation and cross-examination."), *superceded by rule on other grounds as stated in Stinson v. United States*, 508 U.S. 36, 38 n.1 (1993). Though the judge is entitled to "impose reasonable limits" on cross-examination, the Confrontation Clause "guarantees an *opportunity* for effective cross-examination." *Van Arsdall*, 475 U.S. at 679. In *Van Arsdall*, the Supreme Court found a violation of the Confrontation Clause where the trial court "prohibited *all* inquiry into the possibility" that the witness could be biased. *Id.* Thus, the

- 20 -

Confrontation Clause allows reasonable limits, but guarantees an opportunity for effective cross-examination. The trial court more likely violates the Confrontation Clause when it prevents *all inquiry* into an issue.

Confrontation rights were not denied here because, as noted in the above analysis, the excluded evidence does not have sufficient probative value regarding Officer M.R.'s character for truthfulness. Additionally, even though the court denied the defendants the opportunity to introduce this marginally relevant evidence, the defendants were free to find other ways to attack Officer M.R.'s testimony and character for truthfulness. For example, the defendants could have asked whether the officer found it unusual for the drug dealers to pass the drugs from person to person before giving it to the buyer, as would seem suspiciously convenient for the prosecution. Further, the defendants could have presented the officer with Mr. Ramirez's conflicting testimony that he handed the officer the drugs directly, and that Mr. Martinez and Mr. Mendoza were not involved. The defendants were able to ask questions about the lack of corroborating evidence on the video tape and the wire that the defendant wore. Under the circumstances, the defendants had an adequate opportunity to cross-examine the officer even without using the evidence of specific unrelated misconduct. We note also that the defendants could have called another witness, perhaps the complaining officer, to testify about Officer M.R.'s character for truthfulness either through reputation or

opinion evidence.  *See United States v. Holt*, 486 F.3d 997, 1002 (7th Cir. 2007) (citing Fed. R. Evid. 608(a)).

**C.  The district court denied Mr. Beltran an opportunity for allocution; therefore, he must be resentenced.**

Finally turning to Mr. Beltran's argument that he is entitled to resentencing, we review de novo whether a district court denied a defendant his right to speak at sentencing.  *See United States v. Taylor*, 11 F.3d 149, 151 (11th Cir. 1994).

According to the rules of criminal procedure, the district court must "address the defendant personally in order to permit the defendant to speak or present any information to mitigate the sentence" before imposing a sentence. Fed. R. Crim. P. 32(i)(4)(A)(ii).  When a court denies a defendant his allocution rights, the proper remedy is resentencing even when the defendant did not contemporaneously object.  *United States v. Muniz*, 1 F.3d 1018, 1025 (10th Cir. 1993) ("The right to allocution is an integral part of the sentencing process which if not fully afforded to the defendant requires a reversal of the sentence imposed.").  The government concedes that the court denied Mr. Beltran his allocution rights and agrees that he should be resentenced.  Aple's Br. at 40.

Additionally, the government concedes that Mr. Beltran will be able to object to any improper calculation in his presentence report upon remand.  The

court initially sentenced Mr. Beltran based on a guideline range of 210-262 months. Beltran's Motion to Clarify Opening Br. at 1. This guideline range, according to Mr. Beltran, erroneously included extra criminal history points based on a crime Mr. Beltran committed when he was a minor. The corrected guideline range allegedly would be 188-235 months. *Id.* Originally, the district court granted Mr. Beltran approximately a 14% downward variation based on consideration of the 18 U.S.C. § 3553(a) factors resulting in a sentence of 180 months, 8 months below the corrected guideline range. Beltran's Supp. App. vol. II, doc. 198. The government does not object to this 180-month sentence as unreasonable on appeal.

As his counsel noted, Mr. Beltran is "(understandably) concerned" about raising an argument on appeal that may open him up to a higher sentence. Beltran's Motion to Clarify Opening Br. at 2. For Mr. Beltran's sake, we note that on remand a district court may not subject him to harsher penalty out of vindictiveness or otherwise without reason. *See North Carolina v. Pearce,* 395 U.S. 711, 726 (1969), *holding limited by Alabama v. Smith*, 490 U.S. 794, 799-800 (1989); *United States v. Medley*, 476 F.3d 835, 839-40 (10th Cir. 2007); *United States v. Rourke*, 984 F.2d 1063, 1066 (10th Cir. 1992) ("[*Pearce*] requires that when a judge resentences a defendant to a harsher punishment, she must affirmatively state her reasons for doing so." (citation omitted)); *United States v. Latimer*, 548 F.2d 311, 315-16 (10th Cir. 1977). But the sentence in this matter is

in the able hands of the district court that has a "superior feel for the case." *United States v. Jackson*, 903 F.2d 1313, 1317 (10th Cir. 1990) (internal quotation marks and citation omitted).

## III.  CONCLUSION

The district court did not abuse its discretion in excluding evidence of Officer M.R.'s prior misconduct.  Though the district court could have admitted the evidence by allowing the defendants an opportunity to ask appropriately circumscribed questions, the district court was not required to admit the evidence because it was not probative enough of character for truthfulness.  Similarly, the district court did not violate the defendants' confrontation rights because even without the excluded evidence, the defendants had an opportunity to cross-examine the testifying officer effectively.  We, therefore, AFFIRM both Mr. Beltran and Mr. Mendoza's convictions.  With regard to Mr. Beltran, the district court denied him allocution rights; therefore we REMAND his case for resentencing in accordance with this opinion.

Entered for the Court


Robert Henry
Chief Judge