**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 11-1897**

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

             Plaintiff – Appellant,

        v.

THOMPSON  CONTRACTING,  GRADING,  PAVING,  AND  UTILITIES,
INCORPORATED,

             Defendant – Appellee.

Appeal  from  the  United  States  District  Court  for  the  Eastern
District  of  North  Carolina,  at  Raleigh.    Terrence  W.  Boyle,
District Judge.  (5:05-cv-00675-BO)

Argued:  October 23, 2012          Decided:  December 14, 2012

Before NIEMEYER, KING, and AGEE, Circuit Judges.

Affirmed by unpublished per curiam opinion.

**ARGUED:**   Susan   Ruth   Oxford,   EQUAL   EMPLOYMENT   OPPORTUNITY
COMMISSION, Washington, D.C., for Appellant.   Michael Coghlan
Lord, WILLIAMS MULLEN, Raleigh, North Carolina, for Appellee.
**ON BRIEF:** P. David Lopez, General Counsel, Carolyn L. Wheeler,
Acting  Associate  General  Counsel,  Lorraine  C.  Davis,  Assistant
General  Counsel,  EQUAL  EMPLOYMENT  OPPORTUNITY  COMMISSION,
Washington, D.C., for Appellant.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

The Equal Employment Opportunity Commission (the "EEOC") appeals the district court's award of summary judgment to Thompson Contracting, Grading, Paving, and Utilities, Incorporated, in these Title VII proceedings. In September 2005, the EEOC initiated this action in the Eastern District of North Carolina, alleging that Thompson Contracting had violated Title VII by failing to accommodate the Saturday Sabbath observance of a former employee named Banayah Yisrael, an adherent of the Hebrew Israelite faith who had been a dump truck driver for Thompson. The court rejected the EEOC's claim, concluding that Thompson had not breached its Title VII obligations. See EEOC v. Thompson Contracting, Grading, Paving, & Utils., Inc., 793 F. Supp. 2d 738 (E.D.N.C. 2011). As explained below, we affirm.

I.

A.

1.

Thompson Contracting was a construction contractor that provided grading, paving, and utility services for

2

transportation projects in eastern North Carolina.[1]  During the relevant period, Thompson operated on a normal workweek of Monday through Friday, but its operations were weather-sensitive and largely dependent on soil conditions.  In order to meet project deadlines and make up for days lost due to bad weather, Thompson's employees were frequently required to work on Saturday.

Thompson Contracting normally had approximately 250 employees, roughly 200 of whom were general equipment operators who ran various machines and vehicles not requiring a commercial driver's license ("CDL").  Additionally, Thompson usually owned about eight vehicles whose drivers were obliged to maintain a CDL:  five dump trucks, a water truck, and two lowboys (flat trailers that transport heavy equipment).  A CDL driver is a specialty position, and Thompson employed approximately eight CDL drivers.

It was not uncommon for Thompson Contracting to rent additional dump trucks to assist with large hauling operations. To meet such needs, Thompson would hire "independent contractor" dump trucks, which cost from $50 to $100 per hour each.  On a

---

[1] The facts spelled out herein are drawn from the record compiled in the district court, and they are recited in the light most favorable to the EEOC, as the nonmoving party.  See EEOC v. Navy Fed. Credit Union, 424 F.3d 397, 405 (4th Cir. 2005).

busy day, Thompson would utilize as many as forty-five independent contractor dump trucks.

2.

As an adherent of the Hebrew Israelite faith, Mr. Yisrael observed his Sabbath on Saturday. Yisrael's Sabbath observance required him to refrain from working between sunrise and sunset. Thompson Contracting twice employed Yisrael as a dump truck driver, hiring him first in June 2004. During Yisrael's initial period of employment, Thompson became aware of his religious beliefs, scheduled him to work on only one Saturday, and did not discipline him for his absence on that occasion. In September 2004, however, Yisrael tested positive for marijuana and was terminated.

In November 2004, Yisrael reapplied for employment as a dump truck driver and was rehired by Thompson Contracting. Jim Stafford, Thompson's Director of Operations, decided to rehire Yisrael after being assured that his drug use was under control. At that time, Yisrael completed an application indicating his unavailability for Saturday work.

On the first Friday after being rehired, Yisrael was asked to work the following day, December 4, 2004. Yisrael responded to Mike Lowe, his immediate supervisor, that he could not work because of his religious obligation. All of Thompson Contracting's other dump truck drivers worked that Saturday.

4

Thompson did not use any independent contractor dump trucks, and Yisrael was not disciplined for his absence. Yisrael was absent again on Thursday, December 9, 2004, due to an appointment concerning a veterans assistance issue. Although Yisrael had notified Lowe the day prior to the appointment of his anticipated absence, Yisrael received a verbal warning from Stafford for that absence.

On Friday, December 17, 2004, Lowe directed Yisrael to work the following day. When Yisrael informed Lowe that he could not, Lowe responded, "I understand." J.A. 737-38.[2] Yisrael did not work on Saturday, December 18, 2004, but Thompson Contracting's other dump truck drivers worked that day. Thompson also hired thirteen independent contractor dump trucks for that Saturday's work. On Monday, December 20, 2004, Yisrael received a written warning for his Saturday absence, and he was suspended for three days. The warning specified that "this is the second week in a row this has happened," and that the "next infraction will result in termination." Id. at 907.

On Friday, February 11, 2005, Lowe directed Thompson Contracting's dump truck drivers, including Yisrael, to work the next day. All dump truck drivers save Yisrael worked that

---

[2] Citations herein to "J.A. ____" refer to the contents of the Joint Appendix filed by the parties in this appeal.

5

Saturday, and Thompson also hired twelve independent contractor dump trucks. Due to adverse weather, no dump truck drivers worked on Monday, February 14, 2005. That very day, however, anticipating that he would be fired for his absence the previous Saturday, Yisrael filed a charge with the EEOC alleging that Thompson had failed to accommodate his religious beliefs. Yisrael's anticipation of being fired turned out to be correct. When he reported for work on Tuesday, February 15, 2005, Thompson terminated Yisrael's employment. The termination notice specified that Yisrael was being discharged for his failure to have regular and dependable attendance. Stafford advised Yisrael that he "was being terminated because [his] religious schedule conflicted with the company's work schedule." J.A. 1139.

### B.

On September 28, 2005, the EEOC filed its Complaint against Thompson Contracting in the Eastern District of North Carolina, alleging that Thompson had discriminated against Yisrael by failing to accommodate his religious beliefs and ultimately terminating him because of his religion. In addition to back pay, front pay, and punitive damages, the Complaint sought injunctive relief in the form of Yisrael's reinstatement, plus an order barring Thompson from future discrimination and

6

directing the adoption of policies that would eradicate the effects of its past discrimination.

Through subsequent discovery, the EEOC ascertained that another Thompson Contracting employee, general equipment operator Ivan Larios, had been permanently excused from work on Saturdays in order to accommodate his Saturday Sabbath observance. The EEOC also learned that a small number of Thompson's general equipment operators possessed CDL licenses, though they were neither listed on Thompson's liability insurance policies nor trained to drive Thompson's dump trucks.

After the close of discovery on April 20, 2007, Thompson Contracting moved for an award of summary judgment. On March 31, 2008, the district court granted the summary judgment request, concluding that Yisrael's termination was performance-related and identifying no evidence that Thompson had discriminated on the basis of Yisrael's religion. The EEOC appealed and, by decision of June 25, 2009, we concluded that the EEOC had made a prima facie showing under Title VII, and that the evidence presented a genuine factual dispute on why Yisrael was actually terminated. We thus vacated the judgment and remanded for further proceedings. See EEOC v. Thompson Contracting, Grading, Paving, & Utils., Inc., 333 F. App'x 768 (4th Cir. 2009). In so doing, we observed that "summary judgment might still be proper if Thompson shows that it could

7

not reasonably accommodate Yisrael's religious needs without undue hardship." Id. at 772.

On remand, in late April 2010, the district court ordered briefing on the reasonable accommodation issue. Thompson Contracting asserted in its brief, for the first time, that the EEOC's claim for injunctive relief was moot because Yisrael was not eligible to be rehired. Thompson also filed the declaration of a theretofore unidentified witness, Brandon Hudson, a Thompson vice president. On July 6, 2010, the EEOC moved to strike the mootness defense as well as the Hudson declaration. The EEOC asserted that any evidence flowing from the declaration was barred by Rule 37(c)(1) of the Federal Rules of Civil Procedure, which prohibits the use of undisclosed information or witnesses "unless the failure [to disclose] was substantially justified or is harmless."

On October 18, 2010, the district court entered an order accepting Thompson Contracting's mootness defense and thereby dismissing the EEOC's claim for injunctive relief. By its order, the court also ruled that the late disclosure of Hudson as a witness was harmless, and it reopened discovery for sixty days for the limited purpose of deposing Hudson.

On November 4, 2010, the EEOC served Thompson Contracting with an unauthorized new set of discovery requests containing interrogatories and requests for production of documents. On

December 2, 2010, the EEOC noticed Hudson's deposition for December 7, 2010. On December 7, Thompson sought a protective order shielding it from any additional discovery. In support thereof, Thompson filed another declaration, that of its owner, Bobby Ray Thompson, Jr., indicating that the business was "financially unable to perform or complete the performance of the work or comply with its contractual obligations," and that "[a]ll of the Company's contracts have been assigned to other contractors." J.A. 1406-07. On April 4, 2011, the district court entered a protective order, concluding that additional discovery would be of minimal benefit and was not worth the harm it would cause the defendant.[3] Accordingly, the court closed discovery — depriving the EEOC of an opportunity to depose Hudson — and authorized the parties to file additional briefs on the reasonable accommodation issue.

On June 21, 2011, the district court awarded summary judgment to Thompson Contracting. Relying in part on the Hudson declaration, the court determined that Thompson had satisfied its obligation of providing a reasonable accommodation by offering shift-swapping and paid personal leave, and by making

---

[3] On March 19, 2012, during the pendency of this appeal, Thompson Contracting's board of directors authorized Thompson's dissolution, and articles of dissolution were filed with the Secretary of State of North Carolina on March 23, 2012.

9

efforts to personally accommodate Yisrael. See Thompson Contracting, 793 F. Supp. 2d at 744-45. The court also considered and rejected the EEOC's three proposed accommodations of Yisrael's Sabbath observance: (1) that Yisrael be excused from Saturday work; (2) that Thompson create a pool of substitute drivers; and (3) that Yisrael be transferred to the position of general equipment operator. The court concluded that Thompson had met its burden of showing the first two proposed accommodations would each result in undue hardship, and that Thompson could not be required to offer the third because it reasonably believed that Yisrael would have refused such an accommodation. Id. at 745-47. The EEOC timely noted this appeal, and we possess jurisdiction pursuant to 28 U.S.C. § 1291.

II.

We review for abuse of discretion a district court's denial of a motion to strike under Federal Rule of Civil Procedure 37(c). Hoyle v. Freightliner, LLC, 650 F.3d 321, 330 (4th Cir. 2011). The entry of a protective order by a district court is also reviewed for abuse of discretion, which "may be found where 'denial of discovery has caused substantial prejudice.'" Nicholas v. Wyndham Int'l, Inc., 373 F.3d 537, 542 (4th Cir. 2004) (quoting M & M Med. Supplies & Serv., Inc. v. Pleasant

10

*Valley Hosp., Inc.*, 981 F.2d 160, 163 (4th Cir. 1992) (en banc)). We review de novo a district court's award of summary judgment, accepting the facts in the light most favorable to the nonmoving party. *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008).

### III.

On appeal, the EEOC seeks our resolution of three contentions: (1) that the district court erred in denying the EEOC's motion to strike the Hudson declaration and in granting Thompson Contracting a protective order; (2) that the court erred in awarding summary judgment to Thompson; and (3) that the court erred in dismissing the EEOC's claim for injunctive relief. We address those assertions in turn.

### A.

### 1.

In reviewing the EEOC's initial contention, we turn first to the district court's October 18, 2010 order denying the EEOC's motion to strike the Hudson declaration. If a party fails to make the supplemental disclosures required by Federal Rule of Civil Procedure 26(a) or (e), "the party is not allowed to use that information or witness . . . unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). The test for evaluating substantial justification and

11

harmlessness was spelled out in <u>Southern States Rack & Fixture,</u>
<u>Inc. v. Sherwin-Williams Co.</u>, 318 F.3d 592, 597 (4th Cir. 2003).
Premised on its <u>Southern States</u> analysis, the court concluded
that Thompson Contracting's nondisclosure of Hudson and his
declaration was harmless, and it reopened discovery to permit
the EEOC to depose Hudson.[4]  That decision falls well within the
trial court's discretion.

2.

The district court thereafter revisited its discovery
ruling, granting Thompson Contracting a protective order
depriving the EEOC of additional discovery, including an
opportunity to depose Hudson.  In so ruling on April 4, 2011,
the court reiterated that the tardy Hudson disclosure was
harmless.  The court then assessed the declaration of Thompson's

---

[4] In our <u>Southern States</u> decision, we identified five
factors that a trial court should utilize in exercising its
discretion on whether a nondisclosure of evidence was
substantially justified or harmless under Rule 37(c):

> (1) the surprise to the party against whom the
> evidence would be offered; (2) the ability of that
> party to cure the surprise; (3) the extent to which
> allowing the evidence would disrupt the trial; (4) the
> importance of the evidence; and (5) the nondisclosing
> party's explanation for its failure to disclose the
> evidence.

318 F.3d at 597 (observing that first four factors relate to
harmlessness, and final factor relates to substantial
justification).  Here, the district court weighed the first four
<u>Southern States</u> factors, assessing surprise, ability to cure,
potential disruption of trial, and importance of the evidence.

owner regarding the company's financial difficulties and concluded that, in such circumstances, Thompson's burden of responding to additional discovery outweighed the likely benefit of such discovery to the EEOC. See Fed. R. Civ. P. 26(b)(2)(C)(iii).[5]

When the protective order was entered, this case had been pending for more than five years. Thompson Contracting was then in the process of winding down its business and no longer employed several of its witnesses. Meanwhile, the district court had dismissed the EEOC's claim for injunctive relief, and its back pay claim was worth less than $6000. Additionally, little of the information offered by Hudson was new. For example, Hudson's assertion that an unused dump truck cost Thompson $520 per day in contract revenue simply supplied a figure for Stafford's deposition testimony that an idle truck resulted in lost revenue. Indeed, the only new items of

---

[5] Pursuant to Rule 26 of the Federal Rules of Civil Procedure, a court may limit discovery if it determines that

> the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

Fed. R. Civ. P. 26(b)(2)(C)(iii). On this record, the district court weighed each of those factors prior to its entry of the protective order.

13

information in the Hudson declaration were his assertions that all new dump truck drivers at Thompson were required to train for one week, at a cost to Thompson of $11-$12 per hour ($440-$480 for forty hours), and that "[d]uring Yisrael's second term of employment, Thompson welcomed substitutions of drivers for work days that fell on a driver's Sabbath." J.A. 1209. Neither assertion — if true — is essential to our conclusion that summary judgment was appropriate. Put simply, the limited amount of new evidence offered by Hudson, considered in conjunction with the relatively minor sum that remained in controversy and the decline of Thompson's business, support the proposition that the district court did not abuse its discretion in entering the protective order.

## B.

We thus proceed to the EEOC's contention that the district court erred in making its summary judgment award, which we assess de novo. Pursuant to Title VII, it is unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . religion." 42 U.S.C. § 2000e-2(a). Religion is defined, for Title VII purposes, as "all aspects of religious observance and practice, as well as belief, unless an employer demonstrates

14

that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business." Id. § 2000e(j).

In the first appeal in this case, we determined that "the EEOC proffered sufficient evidence of a prima facie case of religious discrimination by Thompson." Thompson Contracting, 333 F. App'x at 770. When a plaintiff has established a prima facie case of religious discrimination under Title VII, the burden of proof shifts to the employer to "demonstrate either (1) that it provided the plaintiff with a reasonable accommodation for his or her religious observances or (2) that such accommodation was not provided because it would have caused an undue hardship — that is, it would have 'result[ed] in more than a de minimis cost to the employer.'" EEOC v. Firestone Fibers & Textiles Co., 515 F.3d 307, 313 (4th Cir. 2008) (alteration in original) (quoting Ansonia Bd. of Educ. v. Philbrook, 479 U.S. 60, 67 (1986)). Although the two prongs of Firestone are "interrelated," Judge Wilkinson therein explained our holding that "the 'reasonably accommodate' and 'undue hardship' inquiries [are] separate and distinct." Id. at 314. The district court's most recent summary judgment award to Thompson Contracting was based on its conclusion that Thompson had satisfied both of the Firestone prongs. We are satisfied to

15

affirm on the undue hardship prong only, rendering it unnecessary to reach the reasonably accommodate prong.

In the summary judgment proceedings, the EEOC proposed three accommodations, namely, that Thompson Contracting excuse Yisrael from Saturday work, create a pool of substitute drivers, or transfer Yisrael to the position of general equipment operator. The district court rejected the first two of the EEOC's proposed accommodations after concluding that Thompson had satisfied its burden of showing that each would result in an undue hardship on the conduct of Thompson's business. The court then concluded that Thompson was not required to offer the third proposed accommodation because it reasonably believed that Yisrael would refuse such an offer. For the reasons set forth below, we agree.

## 1.

First, in asserting that Yisrael could be excused from Saturday work, the EEOC points to Ivan Larios, the general equipment operator for Thompson Contracting who was not required to work on Saturdays. When dump truck drivers were needed on a Saturday, however, it was not uncommon that all of Thompson's dump truck drivers were deemed essential. On February 12, 2005, the specific absence immediately preceding Yisrael's termination, Thompson was compelled to hire thirteen independent contractor dump trucks. Operating one of its own dump trucks

16

cost Thompson around $100 per day, while hiring an independent contractor dump truck cost much more, $50 to $100 per hour. And when one of Thompson's trucks was idle, Thompson was unable to charge for its use, thereby losing revenue. Such a situation is readily distinguishable from that of Larios who, as one of about 200 general equipment operators for Thompson, could be readily excused from Saturday work.

The EEOC also argues that Thompson Contracting could do without Yisrael for Saturday work because such work occurred infrequently. The EEOC emphasizes that, during Yisrael's eleven-week second period of employment, Thompson scheduled only three Saturday work sessions. That fact would not lessen the burden on Thompson, however, on a Saturday when all of its dump truck drivers were needed. At such times, any work left undone by Yisrael's idle truck would necessarily be completed by Thompson's other drivers, or by the hired independent contractors, or not at all. Mandating that Thompson's other dump truck drivers pick up the slack caused by Yisrael's absence from work is an unacceptable alternative, in that we have recognized that "an employer is not required to accommodate an employee's religious need if it would 'impose personally and directly on fellow employees.'" Firestone, 515 F.3d at 317 (quoting Chalmers v. Tulon Co. of Richmond, 101 F.3d 1012, 1021 (4th Cir. 1996)). If Yisrael's work was to be performed by the

17

independent contractor dump trucks, it would cost substantially more than Yisrael's labor. And even if Yisrael's unfinished work was made up during the following week, Thompson would lose contract revenue for any Saturday that Yisrael's dump truck sat idle. Put simply, we agree with the district court that

> [c]ommon sense dictates that either Thompson hired at least one of the independent contractors to make up for Yisrael, the drivers worked harder to make up for his absence, or a combination of both. Guaranteeing every Saturday[] off for Yisrael would inevitably result in an undue hardship to Thompson.

Thompson Contracting, 793 F. Supp. 2d at 745. As a result, the district court did not err in concluding that excusing Yisrael from Saturday work would impose more than a de minimis cost on Thompson, resulting in an undue hardship on the conduct of its business.

### 2.

Second, the EEOC contends that Thompson Contracting failed to satisfy its burden of showing that the EEOC's second proposed accommodation — securing an alternate driver from among Thompson's other employees — would result in a cost that was more than de minimis. In rejecting that proposal, the district court correctly observed:

> The EEOC's proposed substitute driver system would utilize either existing drivers or insure additional drivers. Substituting existing drivers, however, does little to address Thompson's difficulties. On every Saturday that Yisrael was asked to work, Thompson also had all of its other three dump truck drivers working.

18

> Besides the dump truck drivers, Thompson only had four
> other licensed and insured CDL drivers, all of which
> could also drive a dump truck. On at least two
> occasions, December 3rd and 17th, Thompson was already
> using all these available insured CDL drivers when
> Yisrael could not work. Thus, substituting existing
> drivers for Yisrael is not a reliable solution.

Thompson Contracting, 793 F. Supp. 2d at 746 (footnote omitted).

Notably, the EEOC takes no issue with the foregoing factual recitation. It instead argues that there were available substitute CDL drivers on Saturday, February 12, 2005. Recognizing that an alternate dump truck driver would not always be available from within the ranks of Thompson Contracting's CDL drivers, the EEOC suggests that Thompson could have secured a substitute from among the small number of its general equipment operators who possessed a CDL. Those employees, however, had not been hired as CDL drivers, were not identified on Thompson's liability insurance policies, and had never driven Thompson's dump trucks. In order for them to serve as proper substitutes for Yisrael on intermittent Saturdays, they would need to be recruited, trained, and qualified for the company's liability insurance, plus pass a road test. As the district court recognized in this regard,

> [t]hese extra costs would make little sense merely to
> provide an occasional substitute driver for another
> worker. Moreover, makeup days are inherently on short
> notice, so Thompson would need to have several such
> substitute drivers to ensure one would be available
> when needed.

19

Thompson Contracting, 793 F. Supp. 2d at 746. In these circumstances, we agree with the district court that creating a pool of substitute drivers would impose more than a de minimis cost on Thompson, and would therefore impose an undue hardship on the conduct of its business.

3.

Finally, the EEOC proposes — as its third alternative — that Thompson Contracting could have accommodated Yisrael by transferring him to the position of general equipment operator. That accommodation was first proposed by the EEOC in response to Thompson's initial motion for summary judgment, that is, prior to the first appeal. The only record support for the proposition that Yisrael might have accepted such a transfer is in his affidavit of June 18, 2007, filed post-discovery, in which he asserts that he "would have accepted a general equipment operator position had it been offered." J.A. 1203. In rejecting that proposed accommodation, the district court declined to credit Yisrael's affidavit assertion, finding it contrary to his deposition testimony of December 11, 2006. The court also concluded that Thompson was not obliged to offer Yisrael a transfer to general equipment operator because it reasonably believed that such a transfer would be refused. On appeal, the EEOC maintains that the court erred in disregarding

20

Yisrael's affidavit and in concluding that Thompson reasonably believed that Yisrael would have rejected a transfer.

In this Circuit, it is settled that a conclusory affidavit, conflicting with an earlier deposition, is not alone sufficient to create a triable issue of fact. Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 962 (4th Cir. 1996) (citing Rohrbough v. Wyeth Labs., Inc., 916 F. 2d 970, 975 (4th Cir. 1990) ("A genuine issue of material fact is not created where the only issue of fact is to determine which of the two conflicting versions of the plaintiff's testimony is correct." (internal quotation marks omitted))). Here, the record reflects that Yisrael had twice sought and specifically applied for the position of dump truck driver with Thompson Contracting. In his deposition, Yisrael again confirmed that he preferred driving the dump truck over other duties, stating that he was "hired as a dump truck driver, and that's what I expected to do." J.A. 536. Notably, Yisrael was never directly asked during his deposition whether a transfer to general equipment operator would have been accepted, as he later asserted in his affidavit. It is thus arguable that Yisrael's deposition testimony and his affidavit are not in irreconcilable conflict.

Assuming the veracity of the Yisrael affidavit, however, we are satisfied — as was the district court — that Thompson Contracting was not obliged to offer a transfer as an

accommodation. That Yisrael might have accepted a transfer does not resolve this appeal in favor of the EEOC, because it is clear from the record that Thompson reasonably believed that Yisrael would not have agreed to change positions. Lowe, Yisrael's immediate supervisor and Thompson's Director of Production, explained that "[i]f you asked [Yisrael] to get out of the truck to pull string or to shovel a little curb, he would have a lot of mouth," and he would make comments to the effect of "'I'm not a shovel person.'" J.A. 1104. Lowe specified that Yisrael "thought he was a truck driver and that was all," and that Yisrael "would just moan and complain all of the time if he wasn't driving a truck." Id. Accepting the evidence in the light most favorable to the EEOC, it is clear that Thompson reasonably believed that Yisrael would not have accepted a transfer to general equipment operator. Furthermore, Thompson was not required to offer Yisrael an accommodation that, on the basis of his actions, the company reasonably believed would be refused. See Wisner v. Truck Cent., 784 F.2d 1571, 1574 (11th Cir. 1986) ("The concept of accommodation does not require the employer to tender employment arrangements that, based on the employee's own actions, it reasonably believes will be refused.").

Put succinctly, Thompson Contracting was not obliged to offer Yisrael a transfer to general equipment operator, and it

22

has satisfied its burden, under the undue hardship prong of our Firestone decision, of showing that the EEOC's other proposed accommodations would have resulted in more than a de minimis cost to Thompson, causing an undue hardship on the conduct of its business. In these circumstances, each of the EEOC's proposed accommodations must be rejected.[6]

IV.

Pursuant to the foregoing, we affirm the judgment of the district court.

AFFIRMED

---

[6] In light of our endorsement of the district court's summary judgment award, we need not reach the EEOC's contention that the court erred in dismissing its claim for injunctive relief.